JAMES BELL *v.* STATE OF INDIANA.

[No. 1276S431. Filed September 2, 1977.]

*Charles H. Scruggs,* of Kokomo, for appellant.

*Theodore L. Sendak,* Attorney General, *David T. O'Malia* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant James Bell was convicted of the second-degree murder of his wife, Inez, by a jury in Miami Circuit Court, and sentenced to a term of fifteen to twenty-five years. The murder occurred on the evening of April 19, 1976, shortly after both appellant and decedent arrived home for supper. During a disagreement about what they were going to have for supper, the couple began an argument during which they called each other derogatory names. Appellant went to the back part of the house, and returned with a gun. Inez turned and walked toward the back door, at which point the gun in appellant's hand "went off." The only witness to these events was the thirteen-year-old daughter of the Bells, Ramona. After the shooting, appellant and Ramona went

over to check the victim and then appellant went back and drank a beer. Ramona asked her father if he even cared, and he replied, "No, because she didn't care for me."

All of the alleged errors here concern some aspect of either the form of the questioning of Ramona Bell, or of the substance of both her testimony and post-occurrence statements and their use by the prosecution. These alleged errors are: (1) impermissible use by the prosecution of persistent and leading questions to Ramona; (2) refusal to permit Ramona, on cross-examination, to explain what she meant by saying "the gun went off"; (3) admission of the testimony of a neighbor, Carol Cook, concerning statements made to her by Ramona after the shooting; (4) recalling Ramona to the stand after Carol Cook's testimony, which allegedly violated defendant's right against self-incrimination; (5) statements by the prosecutor, in closing argument, with reference to the testimony of Ramona and Carol Cook.

## I.

During direct examination, the prosecutor asked Ramona Bell what position the gun was in when it went off, and she replied that she did not know. He then gave Ramona a statement she made shortly after the shooting, but she said that it did not refresh her memory because she was in shock when she gave it. When Ramona was asked about the position of the gun a third time, the court interjected and stated that she could be a hostile witness. Ramona finally testified about the position of the gun and stated that she remembered.

Appellant argues that the questioning of Ramona was repetitious and leading. Whether a leading question is to be allowed, however, is largely a matter of trial court discretion. Reversible error will be found only upon a showing of abuse of that discretion. *Siblisk* v. *State*, (1975) 263 Ind. 651, 336 N.E.2d 650, 652. Questions intended in good faith, to refresh the memory of a witness by directing his attention to persons and occurrences, are

competent even where the witness is friendly to the party examining him. *Conway* v. *State,* (1889) 118 Ind. 482, 21 N.E. 285, 286. Leading questions may be put to a hostile witness. *Rogers* v. *State,* (1974) 262 Ind. 315, 315 N.E.2d 707, 710.

In the *Siblisk* and *Rogers* cases, this court upheld the use of leading questions of a state's witness where, after having made a statement which led the prosecutor to believe he would be an agreeable witness, hostility was evidenced by the witness' "I don't know" responses when testifying to these same matters at trial. The court in *Siblisk, supra,* at 652, stated:

> "The prosecution had interviewed the witness prior to trial. His initial lapse of memory surprised counsel for the state and evidenced at least faulty recollection and at most hostility. The trial court did not abuse its discretion in permitting the questions asked here."

Such is the case here. The state had twice interviewed Ramona prior to trial concerning this matter. The questions at trial were directed to obtaining from the witness herself a change or correction of her testimony, and such did happen. In light of the circumstances, this was a proper form of questioning and a proper purpose. *Rogers, supra* at 711.

The same rule of discretion applied to the allowance or disallowance of repeated questions. *Schuemak* v. *State,* (1970) 254 Ind. 117, 258 N.E.2d 158; *Merry* v. *State,* (1975) 166 Ind. App. 199, 335 N.E.2d 249. Under the circumstances of the case at bar, it is apparent that the trial court did not abuse that discretion.

Appellant also argues here that the line of questioning of Ramona elicited testimony, about the position of her mother when shot, which contradicted expert testimony about the bullet's trajectory. This argument, however, is simply an invitation to this court to reweigh the evidence and judge the credibility of witnesses, which we will not do.

## II.

On direct examination, Ramona stated several times that the gun either "went off" or "just went off." On cross-examination, defense counsel asked her what she meant by the statement that the gun went off and she replied that the shooting was a "tragic accident." The state objected, and the trial court struck this answer on the ground that it invaded the province of the jury.

Appellant argues that the trial court's action in this instance denied him the right of cross-examination as to matters which had been opened on direct. This is not, however, what occurred. The court only excluded this particular response as an improper opinion and conclusion. A witness will not be allowed to express a conclusion as to the ultimate question to be decided by the jury. *Gurley* v. *State*, (1976) 264 Ind. 552, 348 N.E.2d 16, 19-20. Ramona was allowed to testify on cross-examination to the effect that she was not sure how her father pointed the gun at her mother, that she did not see him point the gun, and that she was not sure exactly what happened. The right to full cross-examination was thus not denied appellant, as he was able to examine the testimony of Ramona on the basis of the facts within her knowledge. There is no error here.

## III.

Conversely, appellant argues that the conclusions of Ramona were in fact admitted into evidence through the testimony of Carol Cook, a neighbor of the Bells who Ramona was with shortly after the shooting. Carol Cook testified that Ramona said at this time, "I knowed something was going to happen, they've been fighting for so long," and, "he wanted to shoot her again." Appellant claims that this evidence was an improper conclusion and opinion of the declarant, Ramona, and an "evidentiary harpoon" which constituted unfair prejudice.

Previously, however, Ramona had testified that "mom and dad were getting along fine," until the shooting, and that

she did not know how her father held the gun when it went off. Ramona's earlier version of these two statements, given to Carol Cook, were thus inconsistent with her testimony at trial. Carol Cook's testimony about Ramona's prior statements were not offered for the purpose of showing their truthfulness, but to show they were in fact made. The jury was admonished to this effect at appellant's request. It is well established that the state may admit prior statements of its witness for impeachment purposes, rather than as evidence of the ultimate issue of guilt or innocence, when the inconsistency between such witness' testimony at trial and a prior statement is a surprise. *White v. State,* (1967) 249 Ind. 105, 229 N.E.2d 652; *Blum v. State,* (1925) 196 Ind. 675, 148 N.E. 193. The opinionative and conclusory aspect of the prior statements here may or may not have made them inadmissible as substantive evidence, but it does not affect their admission for credibility purposes. The testimony of Carol Cook in question was thus properly received.

## IV.

After Carol Cook's testimony about Ramona's statements, the state recalled Ramona for the sole purpose of cross-examination by the defense as to those statements. Appellant renewed his objections to the testimony of Carol Cook, and proceeded to cross-examine Ramona. The argument here is that the state, in recalling Ramona, forced appellant either to violate his right to remain silent or to allow the jury to think he had something to hide if he did not proceed on cross-examination.

The objections made to the testimony of Carol Cook, renewed by appellant when Ramona was recalled, were on the basis of the hearsay and conclusory aspects of Ramona's prior statement. The argument raised on this appeal was not stated in such objections. A defendant cannot give one reason for objection at trial and another on appeal, and the latter is waived when not made before

the trial court. *Rinard* v. *State,* (1976) 265 Ind. 56, 351 N.E. 2d 20. Thus, there is no error here.

## V.

Appellant's final contention is that the prosecution's closing argument to the jury was improper and prejudicial. First, it is argued that the prosecutor, in making reference to the statements of Ramona to Carol Cook, was relying on opinions and conclusions of Ramona which were later repudiated. Next, it is argued that the prosecutor misquoted Ramona's testimony in relation to decedent's position at the time she was shot. Finally, it is argued that the prosecutor referred to statements allegedly made by appellant before the shooting, which statements were not testified to by any witness.

The prosecutor's references to Carol Cook's testimony were not objected to by appellant. Thus, any possible error in these references is waived. *Hendrix* v. *State,* (1974) 262 Ind. 309, 315 N.E.2d 701. Further, the fact that a witness repudiated earlier statements does not make reference to such statements in final argument improper. If the testimony is in evidence, it can be considered for whatever reason the court allowed the evidence in.

The next contention, that the prosecutor misquoted Ramona's testimony about the position of decedent at the time of the shooting, does not have support in the record. Ramona testified that her mother was shot as she reached the door of the kitchen to the back porch. During argument, the prosecutor stated, "We had the testimony of Ramona that she was stepping down, and if you know in your own experience, in stepping down a step, you automatically bend somewhat." The argument the prosecutor was making was based on a fact testified to and in the evidence, in an attempt to explain by inference why the trajectory of the bullet through decedent's body was upward. It is within the range of proper argument to state and discuss the evidence and all reasonable inferences which may be

drawn therefrom, as long as the prosecutor is not merely implying a personal knowledge independent of the facts. *Pearish* v. *State,* (1976) 264 Ind. 339, 344 N.E.2d 296; *Garrett* v. *State,* (1973) 157 Ind. App. 426, 300 N.E.2d 696.

Appellant also alleges that the prosecutor improperly made the following references to appellant's actions before the shooting: "he said he was going to get the gun and kill her—Inez. He went to the front room, got the gun and he got the job done just like he said he would do." The only evidence in the record as to these statements was indirect; Carol Cook testified that Ramona told her of her father's "threats" to her mother. The prosecutor's argument was thus improper and unsupported. The court, however, immediately admonished the jury to the effect that Carol Cook's testimony was admitted for the limited purpose of showing what Ramona said, not that Ramona actually heard such statements. Appellant's failure to move for a mistrial at this point amounted to approval of the curative remarks and a waiver of any impropriety. *See Rexcoat* v. *State,* (1964) 245 Ind. 688, 201 N.E.2d 558; *Hauk* v. *State,* (1974) 160 Ind. App. 390, 312 N.E.2d 92.

There is no reversible error in any of the final arguments of the prosecutor in this case.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 366 N.E.2d 1156.