HENRY F. BARNES, III *v.* STATE OF INDIANA.

[No. 377S160. Filed July 26, 1978.]

*Timothy L. Buckley,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles D. Rodgers,* Deputy Attorney General, for appellee.

PIVARNIK, J.—At the conclusion of a jury trial in the Marion Criminal Court on July 14, 1976, appellant Barnes was convicted of the following three counts: assault with intent to commit a felony, to-wit: robbery, inflicting injury during the course of robbery, and aggravated assault and battery. He was sentenced to life imprisonment for the crime of inflicting injury during the commission of a felony, and to a term of not less than one nor more than five years for the crime of aggravated battery.

The incident in question occurred on May 1, 1976 at approximately 2:30 p.m. At that time, appellant and his co-defendant, Ricky Benson, entered the Corner Grocery in Indianapolis. Appellant carried a shotgun and wore a black felt hat. Later he pulled a nylon mask over his face. While the appellant held the gun, Benson kicked the cashier, Edith Mesalam, several times causing her serious injury. While Benson attempted to open the cash register, the store's butcher, Hubert Lacey, entered the front of the store where he was shot by appellant. Appellant and Benson then fled from the store taking with them a hand gun belonging to Mrs. Mesalam.

At approximately 5:00 p.m. that same day, appellant was arrested in an apartment above the Corner Grocery. In the apartment the arresting officers found a hand gun, a shotgun, a black felt hat and a stocking mask. These items were seized and later introduced as evidence at appellant's trial.

The following issues are presented for review: (1) whether the items seized from the apartment were inadmissible as the fruits of an unlawful search and arrest; (2) the sufficiency of the evidence regarding appellant's conviction of inflicting injury in the commission of robbery and the court's failure to give a tendered instruction concerning abandonment of intent; (3) the sufficiency of the evidence supporting the conviction of aggravated assault and battery; (4) the admission of testimony from Ricky Benson concerning threats he received after his decision to testify against appellant; (5) the denial of appellant's motion for judgment on the evidence; (6) the trial court's decision to restrict each side to thirty minutes for final argument.

## I.

Appellant first contends that it was error for the trial court to admit into evidence the nylon mask and shotgun seized from the apartment where he was arrested. He argues that since the arresting officers could have obtained a search warrant but did not do so, these items should have been excluded as the fruits of an unlawful search. In response to this contention, the state correctly points out that appellant does not have standing to challenge the constitutionality of the search. Illegally seized evidence is excludable only if the person complaining has standing to challenge its admissibility. *Burton* v. *State*, (1973) 260 Ind. 94, 292 N.E.2d 790. In *Burton*, we held that the standing requirement is satisfied if the defendant can establish: (1) a possessory interest in the searched premises or (2) that possession of the seized items is the basis

of the offense or possession is an essential element of the offense. *Id.* at 798.

In this case, the appellant and Ricky Benson were neither the owners of the building nor the tenants of the apartment and thus had no possessory interest in the searched premises. Appellant also fails to establish standing under the second half of the *Burton* test. Although the shotgun and stocking mask constituted damaging evidence, their possession cannot be said to be the basis of, or an essential element of the crime of robbery.

Appellant further argues that there was not probable cause for his arrest. This he argues, rendered inadmissible the items seized from the apartment as products of an unlawful arrest. Probable cause justifying an arrest without a warrant exists if the facts and circumstances known to the arresting officer would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Banks* v. *State,* (1976) 261 Ind. 426, 351 N.E.2d 4, 9. The evidence most favorable to the state discloses that a robbery was committed by two males; that they had shot an individual with a shotgun; that a gun was taken in the robbery; that they had fled the scene of the robbery; that the investigating officer was informed by a citizen that the two men had fled into a certain apartment; that the officer had known the citizen previously but the citizen had not been an informant; that the officer and fellow officers then went to the apartment, announced at the door that they were police officers and upon hearing movement from within but not receiving a response, they forced their way into the apartment and arrested appellant who was hiding in a closet. The arresting officers thus knew that a crime had been committed, and that the two robbers had fled to a particular apartment. They also knew that the robbers, who had shot and wounded an individual, were armed, dangerous and determined to avoid capture. We find that under these facts and circumstances,

there was probable cause for appellant's arrest without a warrant.

## II.

The next assignment of error concerns the sufficiency of the evidence supporting the conviction of inflicting injury in the commission of a robbery. Appellant contends that he abandoned his attempt to commit robbery at a point in time when his accomplice, Ricky Benson, was unable to open the cash register. Since the shooting occurred after this point in time, appellant would have us believe that the infliction of injury did not occur during the commission of a robbery.

Appellant's argument essentially invites this court to reweigh the evidence. In determining the sufficiency of the evidence, the court does not judge the credibility of witnesses nor weigh evidence. We look at only the evidence most favorable to the state and the reasonable inferences to be drawn therefrom. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Mosley* v. *State,* (1977) 266 Ind. 675, 366 N.E.2d 648, 649. The record of the proceedings of the trial below reveals that appellant's accomplice, Ricky Benson, testified that when he was unable to open the register, he continued searching for a cash box behind the counter. While Benson was searching for the cash box, Hubert Lacey entered the front of the store where he was shot by appellant. In addition, when the appellant and Benson fled from the store they took with them a handgun belonging to Edith Mesalam thus consummating the robbery. There was ample evidence from which the jury could find appellant guilty of inflicting injury in the commission of a robbery beyond a reasonable doubt.

In a related argument, appellant claims that the trial court erred in refusing his tendered instruction dealing with abandonment of intent. This instruction stated:

"You are instructed that in order to convict the Defendant of the crime charged in the information, the criminal intent must unite with an overt act committed by the Defendant, and they must concur in point of time. If the Defendant abandons his intention at any time before so much of the act is done as is necessary to constitute an offense, his abandonment would prevent what has been done from being a crime."

The trial judge rejected this instruction as being outside the scope of the evidence. For the following reasons we agree with this ruling.

One who is a party to a plan or design to commit a crime may abandon the idea and withdraw from the plan or design in such a manner and under such circumstances as to avoid liability for its commission. *Hedrick* v. *State*, (1951) 229 Ind. 381, 98 N.E.2d 906, 910. However, in order for a defendant to validly assert the defense of abandonment it must be shown that his renunciation of the criminal plan occurred both voluntarily and prior to the time when the crime was completed.

For an abandonment to be considered voluntary, it must in no way be attributable to the influence of extrinsic circumstances. As stated by one authority:

"The cases are in agreement that what is referred to as involuntary abandonment is no defense. Thus, if the defendant fails because of unanticipated difficulties in carrying out the criminal plan at the precise time and place intended and then decides not to pursue the victim under less advantageous circumstances, he is still guilty of attempt. The same is true when the defendant withdraws because of a belief that the intended victim has become aware of his plans, or because he thinks that his scheme has been discovered or would be thwarted by police observed in the area of the intended crime." W. LaFave and A. Scott, Criminal Law p. 448 (1972).

In short, the attempt to commit a crime must be freely and voluntarily abandoned before the crime is completed and under such circumstances as would show that there were no outside causes prompting the abandonment. In the present

case, the appellant claims he abandoned the robbery plan when his accomplice was unable to open the cash register. This alleged abandonment was clearly motivated by an unanticipated difficulty rather than a free and voluntary decision to withdraw.

Finally, the defense of abandonment is only available in cases involving attempted crimes. Obviously, one cannot abandon an attempt to commit an offense after the crime has been completed. As we found in our discussion of the first part of this issue, the crime of robbery was completed when the appellant carried away the hand gun belonging to Edith Mesalam. Therefore, the appellant could not have abandoned his attempt to commit robbery since the robbery, in fact, took place.

The trial court properly refused appellant's tendered instruction since his theory of abandonment is wholly unsupported by the evidence. *Bivens* v. *State,* (1970) 254 Ind. 184, 258 N.E.2d 664, 647.

### III.

Appellant asserts that the verdict finding him guilty of aggravated assault and battery was not supported by sufficient evidence. His sole claim in this regard is that all of the evidence which related to the injuries inflicted upon Edith Mesalam, showed that it was Ricky Benson who was the perpetrator of the attack. Looking to the evidence most favorable to the state along with the reasonable inferences to be drawn therefrom, we find that the appellant pointed a shotgun at the victim, Edith Mesalam, and ordered her to lie on the floor behind the counter. While appellant stood over the victim, his confederate proceeded to kick Mrs. Mesalam about the body causing temporary paralysis to one side and resulting in her confinement in a hospital for two weeks.

Where two or more persons combine to commit a crime, each is criminally responsible for the acts of his confeder-

ates committed in furtherance of the common design. *Mosley* v. *State*, (1977) 266 Ind. 675, 366 N.E.2d 648, 649; *Williams* v. *State*, (1976) 265 Ind. 190, 352 N.E.2d 733, 744. We find the evidence recited above to be sufficient to support appellant's conviction of aggravated assault and battery upon Edith Mesalam.

## IV.

The appellant next contends that it was error for the trial court to allow testimony from the state's witness, Ricky Benson, that he had received threats concerning his decision to testify against appellant. However, appellant neither objected to this testimony at trial nor did he include the issue in his Motion to Correct Errors. Thus any possible error in this reference is waived. *Bell* v. *State*, (1977) 267 Ind. 1, 366 N.E.2d 1156; Ind. R. Tr. P. 59 (G). Further, all evidence relating to bribery, threats and other influences which affect the credibility of a witness and the weight to be given to the testimony of a witness should certainly go before the jury. *Adler* v. *State*, (1967) 248 Ind. 193, 225 N.E.2d 171, 173.

## V.

Appellant next contends error in the trial court's denial of his motion for Judgment on the Evidence made at the close of the state's case-in-chief. After denial of his motion, appellant proceeded to introduce evidence in defense. This action constitutes a waiver of any error on this question. *Sypniewski* v. *State*, (1977) 267 Ind. 224, 368 N.E.2d 1359, 1362; *Parker* v. *State*, (1976) 265 Ind. 595, 358 N.E.2d 110.

## VI.

The appellant's final argument urges error by the trial court in restricting the state and appellant to thirty minutes

for final argument. The time allotted by the trial court for final argument is within the sound discretion of the trial judge. *Hashfield* v. *State*, (1965) 247 Ind. 95, 210 N.E.2d 429, 438. The record reveals that the trial court originally allotted twenty minutes to each side for argument. The appellant objected to this restriction whereupon the court allowed an additional ten minutes per side. The record fails to disclose that appellant objected to the amount of time ultimately allotted. Also, appellant's briefing of this issue fails to establish the manner in which the presentation of his defense was prejudiced by the thirty minute limitation. We see no error in the trial court's exercise of its discretion.

The judgment of the trial court is affirmed.

Givan, C.J., concurs; DeBruler, J., concurs in result with opinion in which Hunter and Prentice, JJ., concur.

### OPINION CONCURRING IN RESULT

DeBRULER, J.—I find that I am unable to concur in the suggestion in the opinion for the Court that only those persons having a possessory interest in the premises searched have standing to contest the validity of the search. This suggestion is contrary to the clear language in *Paxton* v. *State*, (1970) 255 Ind. 264, 276, 263 N.E.2d 636, 642:

> " 'No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone *legitimately on the premises where a search occurs* may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.' *Jones* v. *United States* (1960), 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697, 706.
>
> We are not here concerned with the protection of property rights, but rather with the protection of the right to privacy. *Katz* v. *United States*, (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576."

See also *Brown* v. *United States*, (1973) 411 U.S. 223, 227 n. 2, 93 S.Ct. 1565, 1568, 36 L.Ed.2d 208; *Mancusi* v. *DeForte*,

(1968) 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154; *Bumper* v. *North Carolina,* (1968) 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; *Simmons* v. *United States,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *State* v. *Porter,* (1975) 163 Ind. App. 509, 324 N.E.2d 857.

Here appellant failed to show that he was legitimately on the premises and lacks standing for that reason, not because he was neither owner or tenant.

Hunter and Prentice, JJ., concur.

NOTE.—Reported at 378 N.E.2d 839.