GERALD LYNN HARRISON *v.* STATE OF INDIANA.

[No. 977S639. Filed December 1, 1978.]

*Barry L. Standley,* of Evansville,, *John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles D. Rodgers,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Harrison and one Jeffrey Jackson were indicted on charges arising out of the shooting death of Jack Kinsler in Evansville on August 8, 1976. In a separate trial Jackson was convicted of first-degree murder. Appellant Harrison was later tried to a jury in the Vanderburgh Circuit

Court and on April 13, 1977, was found guilty of first-degree felony murder. Harrison was sentenced to life imprisonment.

The evidence adduced at trial showed that on the night of August 8, 1976, Jeffrey Jackson asked appellant if he wanted to make some money. When appellant asked how, Jackson told him "never mind." The two then walked to a phone booth where Jackson called for a cab. When the cab arrived, Jackson entered the front seat and appellant sat in the back behind the driver, Jack Kinsler. As they were headed toward their destination, appellant reached over the front seat, grabbed Kinsler around the chest, ordered him to put his hands on the ceiling and told Jackson to get the money. Jackson then hit Kinsler in the forehead with the butt of a revolver. Appellant released his grip on the driver and was moving toward the door when Jackson shot and killed Kinsler.

Later that night, appellant called his friend, Charles Lilly, and informed him that someone had been shot and possibly killed and that he needed to talk to him. Lilly, who had been asleep, told appellant that he would meet him the next day. The next morning, Jackson and appellant read that the cab driver, Jack Kinsler, had died. The two then went to the home of Jackson's girlfriend where Jackson handed the murder weapon to the girl's brother, James Bushrod, with instructions to destroy it. Bushrod later threw the gun in a river. Sometime later, appellant met with Charles Lilly and told Lilly that he was afraid and needed advice. Appellant did not reveal any details of the shooting at that time. At 6:30 p.m. the same day, appellant and Jackson fled, by bus, to Indianapolis.

Within a few days, appellant returned to Evansville and again met with Charles Lilly. This time appellant told Lilly about the shooting. Lilly advised appellant to turn himself in. Appellant at first declined this advice but called Lilly on several occasions to ask what would happen to him if he surrendered. Lilly then contacted a church deacon who arranged a meeting between himself, Lilly, and Detectives Bagbey and

Erk, for the purpose of inquiring as to what action would be taken against appellant if appellant decided to turn himself in. Before the meeting, Detective Bagbey contacted Chief Deputy Prosecutor Kissinger and asked what he should say to Lilly and the deacon. Kissinger told Bagbey to avoid making specific statements or promises of leniency for the reason that it might taint any subsequent statement the suspect might give. He instructed Bagbey to inform the people that he, Bagbey, had no authority to make any promises of future leniency, but that if the person involved would turn himself in, it would be taken into consideration when formal charges were filed. This message was then conveyed by Bagbey to Lilly and the deacon. Lilly, in turn, informed the appellant. Appellant asked Lilly what he thought the message meant, and Lilly told him that he thought a deal had been made. On November 10, 1976, some three months after the shooting of Jack Kinsler, appellant surrendered to police.

Appellant presents eight issues for our review. These issues concern: (1) the denial of his Motion to Suppress oral statements made to police; (2) the amount of proof required to establish the corpus delecti of felony-murder; (3) the trial court's refusal to allow appellant to read from a suppressed written confession; (4) the introduction of evidence relating to certain acts of Jeffrey Jackson subsequent to the shooting; (5) the propriety of the court's reasonable doubt instruction; (6) the propriety of the court's instruction on abandonment; (7) the refusal of several of appellant's tendered instructions, and; (8) the sufficiency of the evidence.

## I.

Appellant first argues that the trial court erred in denying his Motion to Suppress incriminating oral statements he made to police. The facts and circumstances surrounding the making of these statements were as follows. After deciding to surrender, appellant arrived at the police station in the com-

pany of his friend, Charles Lilly. There they were met by Detective Bagbey who took them to an interrogation room. Bagbey asked appellant whether he could read and he answered that he could. Bagbey then handed appellant a form containing the *Miranda* warnings and asked appellant to follow along as he read. After reading the warnings, Bagbey asked appellant if he understood his rights. Appellant answered no. The detective again read the warnings to appellant and asked if he understood them. Appellant turned to Lilly who proceeded to read the warnings to appellant a third time. This time appellant acknowledged his understanding and signed a waiver of rights form.

The detectives then conducted an oral interview with appellant in Charles Lilly's presence. During the questioning, appellant was asked whether he had been promised anything in exchange for making the statement. Appellant answered yes. The detectives said that he must not understand and told him that they could not make any promises. Bagbey then called Chief Deputy Prosecutor Kissinger and asked what he should tell appellant. Kissinger instructed Bagbey to inform appellant that he could "entertain a reasonable expectation" that his cooperation could be of benefit to him, "but not necessarily."

When the oral interview was completed, Lilly was asked to leave, a typist was found, and a written statement was taken from appellant. The police gave appellant the written statement to read and Lilly was allowed to re-enter. As appellant could not read very well, Lilly took the statement and began reading it to him. Before finishing, Lilly quit reading the statement out loud, but continued to read silently and suggested that several corrections be made. Appellant initialed the corrections and signed the statement.

Appellant, before trial, moved to suppress both the oral and written statements given to police. Following a hearing on the motion, the trial court refused to suppress the oral state-

ments. However, the court ordered the written statement suppressed on the ground that appellant had not read the statement prior to signing it. Appellant now challenges the court's ruling as to the oral statements.

The question of the admissibility of a confession is controlled by determining, from the totality of circumstances, whether or not is was made voluntarily. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement, and whether the accused's will was overborne. *Murphy* v. *State*, (1977) 267 Ind. 184, 369 N.E.2d 411, 415. We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial probative evidence to support the trial court's finding. *Works* v. *State*, (1977) 266 Ind. 250, 362 N.E.2d 144. We will not disturb a trial court's ruling on the admissibility of a confession when such ruling is based on substantial, though conflicting evidence. *Riggs* v. *State*, (1976) 264 Ind. 263, 270, 342 N.E.2d 838, 843.

Appellant contends that his oral statements to police should have been suppressed because the statements were involuntary, and because appellant did not voluntarily waive his rights. He argues that both the statements and the waiver were involuntary due to the appellant's low intelligence and poor reading skill, and because they were improperly induced by the prosecutor's promises of mitigation. As to the appellant's intelligence and reading ability, the evidence at trial showed that appellant had an I.Q. of 90 and read at the fourth grade level. While these figures may be below normal, this court has held that "lack of formal education is more detrimental to the validity of a waiver in those cases in which the accused is merely given an advice of rights form to read for himself." *Ortiz* v. *State*, (1976) 265 Ind. 549, 356 N.E.2d 1188, 1192. Here, the appellant was

given an advice of rights form to read from while the interrogating officer read and explained the rights to him. When appellant indicated that he did not understand the rights, they were further read and explained to him by his friend, Charles Lilly. Under these facts, appellant's intelligence and reading ability were not such as would render involuntary his waiver of rights and the subsequent statements.

Appellant also contends that his oral statements were inadmissible because they were induced by the prosecutor's "promises." It is true that a confession is inadmissible if it is obtained by a promise of immunity or mitigation of punishment. *Ashby* v. *State*, (1976) 265 Ind. 316, 354 N.E.2d 192. In *Ashby*, the defendants had confessed to a crime for which they could have received life sentences, in return for a promise of a ten year determinate sentence. These confessions were thus found to have been induced by a promise of mitigation of punishment. In contrast, a defendant in *Ortiz* v. *State, supra*, was found to have voluntarily confessed despite the fact that a police detective had stated that if the accused would confess, he would "see what he could do for him" and "could talk to the prosecutor and make a deal." These statements were distinguished from those made in *Ashby* on the basis that they were "vague and indefinite" such that they did not constitute an inducement sufficient to render the confession involuntary. *Ortiz, supra*, at 356 N.E.2d 1192.

In the present case, appellant asserts that his confession was induced by the prosecutor's statement that appellant's "cooperation could be of benefit to him, but not necessarily," and was therefore involuntary. We disagree. While it may be true that the prosecutor's comment is what induced appellant to confess, it does not necessarily follow that such inducement was improper. We think it apparent that the substance of the prosecutor's comment was vague and ambiguous and thus not the sort of remark pro-

hibited by *Ashby*. The fact that appellant's friend, Charles Lilly, interpreted the remark as a promise of a plea bargain is of no moment. When an accused, who is advised of his right to counsel, chooses to forego that right and instead relies upon the advice of a layman to waive his rights and confess, the waiver and confession will not be deemed involuntary simply because of such misplaced reliance. *See Korn* v. *State*, (1978) 269 Ind. 181, 379 N.E.2d 444, 448. Appellant's Motion to Suppress the oral statements was properly denied.

## II.

Appellant next argues that the trial court erred in admitting his oral admissions into evidence before the state had established through independent evidence, the corpus delecti of the crime of murder in the commission of a felony, to wit: robbery. Appellant admits that the state had introduced adequate evidence showing that a felonious homicide had occurred. He argues, however, that before his oral confessions were admissible, it was necessary that the state also introduce independent evidence showing the commission or attempted commission of a robbery. This court rejected an identical argument in *Jones* v. *State*, (1969) 253 Ind. 235, 252 N.E.2d 572. *Jones*, which was also a robbery-murder case, contained a detailed analysis of the history and purpose of the rule requiring proof of corpus delecti prior to the state's use of a defendant's confession. There we concluded by holding that in a prosecution under the felony-murder statute, the state is not required to establish, through evidence independent of the confession, the exact felony or attempted felony underlying the charge. The defendant's confession was admissible once the state had shown through independent evidence that "the homicide committed in this state was one of violence under circumstances from which one could draw the conclusion that it was criminal in nature." *Id.* at 253 Ind. 250, 252 N.E.2d 580. In the case at bar the state had shown, prior to the admission of appellant's oral state-

ments, that Jack Kinsler was found shot in his taxi and that he subsequently died as a result of a bullet wound to the heart. This evidence was sufficient under *Jones*.

Appellant also argues that his oral statements to police should not have been admitted into evidence because, under the parol evidence rule, they were merged into the subsequent written statement. Appellant has cited no authority in which the parol evidence rule has been applied to written criminal confessions. This is presumably because the rule is applied only in situations where the writing in question was intended to be fully integrated by the parties thereto, as, for example, in the case of a negotiated contract between parties of equal bargaining power. *See generally Weaver* v. *American Oil Company*, (1971) 257 Ind. 458, 276 N.E.2d 144; M. Seidman, The Law of Evidence in Indiana p. 148 (1977). In any event, we now hold that the rule has no application in this context. Appellant's oral admissions were thus properly admitted at trial.

### III.

Appellant next argues that the trial court erred by not allowing him to use allegedly exculpatory portions of the suppressed written confession for the purpose of impeaching a state's witness. The witness, Detective Erk, had testified, on direct examination, as to the oral interview with appellant conducted prior to the taking of the written statement. During cross-examination, appellant sought to read certain portions of the written statement which appellant contends were exculpatory and which he claims would have impeached Erk's testimony. Appellant further sought to prohibit the state from making any reference to the fact that the written statement was a confession. The state, in turn, requested that should appellant be allowed to use selected portions of the statement, that the state be allowed to introduce the balance of the confession. The court denied appellant's motion and excluded the written statement in its entirety.

The record reveals that during cross-examination, defense counsel did not ask Detective Erk whether or not appellant had ever made the allegedly exculpatory statements. Moreover, the substance of these statements was later elicited through the testimony of Detective Bagbey. Thus, the portions of the written statement which appellant had hoped to introduce were not admissible for impeachment purposes as no foundation had been laid for their use. Also, the evidence thus excluded was merely cumulative since the same information was put before the jurors through another witness. There is no error here.

## IV.

Appellant argues that it was error to allow testimony into evidence by James Bushrod, concerning Bushrod's disposal of the murder weapon at the behest of Jeffrey Jackson. Appellant contends that this testimony should have been excluded because it concerned actions of a co-principal, subsequent to the commission of the crime, and outside the presence of the appellant. This argument is without merit as the record shows that before Bushrod testified there was evidence that appellant had accompanied Jackson to Bushrod's residence. Thus, the actions of Jackson in having Bushrod dispose of the weapon were not outside the presence of appellant and were therefore admissible against appellant.

## V.

Appellant's next issue concerns the trial court's instruction defining reasonable doubt. He contends that the sentence, "The bare possibility that the defendant may be innocent does not raise a reasonable doubt," confused and misled the jury. In conclusive fashion, appellant asserts that the above quoted sentence tends to "disparage or even negate" the presumption of innocence. This court recently held that a defendant was not prejudiced by a similar

instruction where such instruction was juxtaposed with an instruction charging the jury not to act upon whim or speculation. *Carter* v. *State,* (1977) 266 Ind. 196, 361 N.E.2d 1208, 1211. Here the trial court included language that the jury should not act on mere whim or speculation within the very same instruction which contained the "bare possibility" language. There was thus no error in giving this instruction.

## VI.

Appellant next advanced numerous arguments going to the propriety of the following jury instruction concerning the defense of abandonment.

"When two or more persons combine to commit a crime, each is criminally responsible for the acts of his confederates committed in the furtherance of the common design, the act of each being the act of all. However, one who has encouraged the commission of a crime may nevertheless, before its completion, withdraw all his aid and encouragement and escape criminal liability for the completed crime. In order to constitute an effective abandonment of a criminal enterprise, there must be some appreciable interval between the alleged abandonment and the criminal act. The accused must have wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be such as to show not only a determination upon the part of the accused to go no further but also such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the action 'in question' is committed."

This instruction is a combination of two charges which this court approved in *Hedrick* v. *State,* (1951) 229 Ind. 381, 389, 98 N.E.2d 906, 910. Appellant objected to this instruction for the following reasons: the instruction failed to state that once the defense was used by appellant, that the state must then negate such defense by proof beyond a reasonable doubt; that it was error to require an appreciable interval between the alleged abandonment and the criminal act; that it was

error to instruct that the abandonment must occur in such a manner as would give his co-conspirator a reasonable opportunity to follow his example; it was error to refer to co-conspirators inasmuch as appellant was not charged with conspiracy; the instruction erroneously imposes a higher standard of conduct upon appellant than does the defense of insanity; and appellant's tendered instruction concerning abandonment correctly defined the issue but was refused by the court. We find no fault with the above instruction and accordingly reaffirm our holding in *Hedrick* that the instruction sufficiently states the law regarding abandonment. We also note that under the facts as presented at trial appellant had not made out a valid defense of abandonment. In order for a defendant to validly assert the defense of abandonment it must be shown that his renunciation of the criminal plan occurred both voluntarily and prior to the time when the crime has been consummated or has become so inevitable that its commission cannot reasonably be stayed. *Barnes* v. *State,* (1978) 269 Ind. 76, 378 N.E.2d 839; *Hedrick, supra.* Here, the alleged abandonment did not occur until after appellant had grabbed the cab driver, ordered him to place his hands on the ceiling, and instructed Jackson to take the money. By this time, the killing of Jack Kinsler, which followed shortly thereafter, had become so inevitable that its commission could not reasonably have been stayed as a result of abandonment, if any, by appellant.

## VII.

Appellant next argues for reversal based upon the trial court's refusal of five of his tendered instructions. The first instruction concerned the defense of abandonment, which appellant contends should have been given in place of the erroneous instruction given by the court. In view of our holding in Issue VI, *supra,* this contention is without merit.

Defendant's instruction no. 3 stated:

"Where testimony is directly conflicting and all versions, as given to you, cannot be true, and there is reasonable

doubt as to which evidence is true, it is your duty to accept that version which is consistent with the innocence of the defendant."

This instruction was refused by the trial court, which refusal appellant contends was error as no comparable instruction was given. We disagree. The gist of this instruction seems to be that if a reasonable doubt is raised by a conflict in the evidence, the jury is required to acquit. This idea was adequately covered by many of the court's instructions, including no. 8, which contains language nearly identical to that contained in appellant's tendered instruction.

Defendant's tendered instruction no. 5, relating to the idea that each juror must decide the case for himself, was covered by court's instruction no. 20. Similarly, the refusal of defendant's instruction no. 8 was proper in light of numerous court instructions on the same subject matter.

The appellant's final instruction argument is directed toward the refusal of his tendered instruction which stated, among other things, that appellant had repudiated his confessions. There was no evidence presented at trial which would show such a repudiation. There was thus no error in the trial court's refusal of any of these instructions.

## VIII.

Finally, appellant challenges the sufficiency of the evidence supporting his conviction. Appellant presents two claims in this regard: (1) that the state failed to present evidence, independent of appellant's confession, to establish corpus delecti, and; (2) that the uncontradicted evidence established that appellant had abandoned the attempted robbery prior to the shooting. In light of our disposition of these two claims in Issues II and VI, *supra,* these arguments must fail.

The judgment of the trial court is affirmed.

Givan, C.J., DeBruler, Prentice, JJ., concur.

Hunter, J., dissents with opinion.

## Dissenting Opinion

HUNTER, J.—I respectfully dissent from the holding within Issue One of the majority opinion. The majority has concluded that Harrison's confession was voluntary because the inducement made by the prosecutor was not improper in that the substance of the prosecutor's comment was vague and ambiguous and, thus, not the sort of remark prohibited by *Ashby* v. *State,* (1976) 265 Ind. 316, 354 N.E.2d 192. However, I feel the evidence shows that the prosecutor's comment was understood by the defendant as a promise even though it was stated in broad terms.

Harrison turned himself in. The evidence was uncontradicted that Harrison had inferior verbal comprehension skills, both reading and speaking. In fact, the trial judge suppressed Harrison's written statement because he found that Harrison had not read the statement. There is no evidence in the record that Harrison ever understood the waiver of rights which was read to him. In fact, after an officer twice read defendant's rights to him, the defendant still indicated that he did not understand. It was only after the defendant's friend Lilly read the defendant his rights the third time and stated to the defendant that "the consideration and leniencies would come later," that Harrison signed the waiver. Since the defendant was not represented by an attorney at this time, and since the officer was on notice that the defendant did not clearly understand his rights, the questioning should have been discontinued until Harrison consulted with an attorney. *See Pirtle* v. *State,* (1975) 263 Ind. 16, 323 N.E.2d 634. In addition, the officer should not have silently acquiesced in Lilly's assurances to the defendant.

Under the test set out in *Ashby* v. *State, supra,* it is clear that a confession is inadmissible if it was obtained by a promise of immunity or mitigation of punishment. An implied promise may destroy the voluntariness of the confession in the same way as a direct promise. *See: Shotwell Manufacturing Co.* v. *United States,* (1963) 371 U.S. 341, 83 S.Ct. 448,

9 L.Ed.2d 357; *Smith* v. *United States,* (1954) 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; *Sorenson* v. *United States,* (8th Cir. 1906) 143 F. 820.

The burden is on the state to prove that the confession or waiver was *voluntary beyond a reasonable doubt. Burton* v. *State,* (1973) 260 Ind. 94, 292 N.E.2d 790.

Justice DeBruler pointed out in *Ashby* v. *State, supra,* that:

"[I]n considering whether the State has met its burden, 'We will consider the evidence which supports the decision of the trier of fact in the case of contested evidence, and any uncontested evidence presented by the appellant.'"
*Citing Magley* v. *State,* (1975) 263 Ind. 618, 335 N.E.2d 811, 818. 265 Ind. 316, 321, 354 N.E.2d 192, 195.

The evidence before us in this case was uncontested in the following particulars:

1. The defendant at first stated to the police that he had been promised a deal in exchange for his statement.

2. Lilly stated, in front of police officers, that there was a deal made, but the police could not come right out and say it; the police officers did not correct Lilly or warn the defendant that Lilly had misinterpreted any "promises." The police acquiesced.

3. Officer Bagbey told the defendant he expected that the defendant's assistance in voluntarily coming forward would be taken into consideration at the time formal charges were filed.

4. Officer Bagbey said he was told by Chief Deputy Prosecutor Kissinger to tell the defendant he "could entertain reasonable expectations that your cooperation could benefit you . . . could be of benefit to you."

5. Officer Bagbey read that statement to the defendant before the defendant's statement was taken.

6. Chief Deputy Prosecutor Kissinger testified that he told Officer Bagbey to tell the defendant that "he could enter-

tain a reasonable expectation of his assistance to the police at this time would be of some benefit to him in the future."

7. Chief Deputy Prosecutor Kissinger characterized the statement as "open ended"; Officer Bagbey was instructed to avoid making any specific statements or promises of leniency because it might taint the statement the defendant might make and thus render it useless at trial.

I am fully aware that Lilly's presence at Harrison's interrogation contributed to the confusion surrounding the voluntariness of the statement. However, I am also aware that the police were conducting an in-custodial interrogation of the defendant; they were bound to protect defendant's constitutional rights, and still they acquiesced in Lilly's expressed understanding that a deal was promised.

The defendant was entirely too trusting in this case; that is obvious. The case was unsolved when defendant came forth. But the state, instead of laying its cards on the table and saying, "We can make no promises," appeared intentionally to utilize language which was open-ended at its best and misleading at its worst. Furthermore, the police were clearly aware that the defendant in this case had trouble understanding the written waiver form and that he had inferior verbal skills. Yet they made no extra efforts to insure that his confession was voluntarily given.

The majority points to the decision of this Court in *Ortiz* v. *State,* (1976) 265 Ind. 549, 356 N.E.2d 1188. In that case there were questionable inducing statements made, but in this case the evidence is uncontested that an inducing statement was made to the defendant in the presence of the police.

Our function is the administration of justice and our goal is the truth. But the truth must be obtained within the law. The defendant was not bound by our laws to incriminate himself, yet he did that in order partially to right the wrong that had been done. When the police stood silently by as Lilly "explained" to the defendant that deals and leniencies would

result from his statement, the silent acquiescence provided a basis for defendant's reliance upon the complicated statement of the prosecutor regarding the reasonable expectation that his cooperation would benefit him.

I fear that by decisions such as this one, we may be approaching a position that approves collusive conduct between police and the prosecutor's staff to mislead and confuse defendants as to the existence of possible deals. In this case the police appear to have induced a confession with vague promises, the imprecise nature of which was beyond the comprehension of the defendant. The confession so induced was not voluntarily given, and it should have been suppressed.

I would reverse and order a new trial.

NOTE.—Reported at 382 N.E.2d 920.