Albert BENNETT, Appellant,

v.

STATE of Indiana, Appellee.

No. 480S116.

Supreme Court of Indiana.

May 6, 1981.

Terry C. Gray, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Albert Bennett was charged in Lake Superior Court with five counts of theft, class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.). After a jury trial, appellant was convicted on all five counts. Bennett presents three issues for our review, concerning: (1) whether the evidence was sufficient to overcome the defense of entrapment; (2) whether the trial court erred in overruling appellant's motion in limine and admitting certain videotapes into evidence; (3) whether the cumulative effect of these issues amounts to fundamental error.

The offenses of which Bennett was convicted each involved motor vehicles stolen in the Lake County area in the late summer and fall of 1978. In 1978, Indiana State Police officers and F.B.I. agents established a "dummy" corporation in Hammond, Indiana, under the name of International Auto Brokers. This type of police operation has come to be known as a "sting" operation. International Auto Brokers acted as a "fence," purchasing stolen vehicles for resale from persons in the area having such items. The goal of the "sting" was the detection and apprehension of persons who were stealing motor vehicles and in turn selling them in an undercover, illicit market. International Auto Brokers used a large warehouse, which contained an area in the back sufficient to house approximately thirty vehicles, and a front room, called the "buy room." This room was equipped with audio-visual equipment for the purpose of recording the illicit transactions.

State Police Officer Gerald Hole acted as president of International Auto Brokers under the name D. J. Ringo. Other State Police officers and F.B.I. agents also worked in the investigation, observing and videotaping the transactions, as well as taking photographs of the vehicles and persons involved. The operation also employed a confidential informant, George Morris, for the purpose of introducing suspects to the arrangement. Morris brought appellant Bennett to the "buy room," but made no deals with him concerning the purchase of any of the items Bennett had for sale. Sergeant Hole always conducted negotiations in the "buy room." Near the time of Bennett's arrest, informant Morris was removed from the jurisdiction to ensure his safety. Morris did not appear at the trial; however, though his whereabouts was not disclosed, the State indicated at all times that, if a subpoena were issued for George Morris, he would be produced. It does not appear that appellant ever attempted to subpoena or produce Morris as a witness at trial.

Appellant first came to the warehouse in the company of Morris on July 11, 1978. At that time, he offered to sell Sergeant Hole a black G.M.C. four-wheel drive vehicle. This vehicle had been stolen earlier that day from a restaurant parking lot, and was subsequently identified by its owner. Hole told Bennett that the operation was being curtailed and that he was not very much interested in buying a four-wheel drive truck. However, Hole ultimately agreed to purchase the vehicle for five hundred dollars, which was somewhat less than Bennett's original asking price.

Bennett also inquired at that time if Hole was interested in purchasing blank title certificates and federal door stickers. He stated that he had available blank title and registration certificates and "V.I.N. plates" and rivets. These plates were those placed on the vehicle door at the time the vehicle is manufactured, and bear the vehicle identification number. Bennett also informed Hole that he had access to vehicles out of a factory in Detroit, and stated he could furnish such a vehicle for twenty-three hundred dollars. Hole informed Bennett that this was too high a price.

Bennett returned to the warehouse on several occasions in the summer and fall of 1978, selling four more vehicles to Hole. Each of these vehicles had been stolen in

the Lake County area, and each was ultimately identified by the respective owners and proved to have been stolen. On each occasion in the "buy room," Bennett indicated to Hole that he had access to other merchandise which was for sale to Hole and his associates. This merchandise included, at various times, three hundred kitchen cabinets, two hundred and fifty television sets, two hundred leather coats, a semi-trailer load of beef, a semi-trailer load of groceries, two hundred Black and Decker drills, and various other motor vehicles. Sergeant Hole and his associates knew nothing of any of the particular items they purchased from Bennett until he came to the "buy room" and presented the items for sale. At that time, Bennett informed Hole of the place and manner in which he had obtained the vehicle.

## I.

Appellant first claims the State did not present sufficient evidence to overcome his entrapment defense. Bennett claims that, once he raised the defense of entrapment, the State was bound to show beyond a reasonable doubt that he was not entrapped into the commission of these crimes. Appellant bases his contention primarily on the fact of his initial contacts with informant Morris. Burnett asserts that, since Morris did not testify, there was no showing that Bennett was not induced by Morris, as an agent of the police, to take part in all of these transactions. Thus, he claims, the State did not prove that he was disposed to commit these crimes before he conducted the transaction with Hole in the "buy room."

■ Appellant is, of course, correct in his assertion that the burden is on the prosecution, when the issue is raised, to show that the defendant was not the victim of entrapment. This question is one of fact, and thus to be determined by the jury after weighing all the evidence presented to them. In this regard we do note that the informant, Morris, was available as a witness if he had been subpoenaed. It does not appear that Burnett attempted to secure

the informant's presence at trial; likewise, he did not raise any question at trial concerning Morris' presence.

Our cases have adapted a "subjective approach" to the entrapment defense. In *Hardin v. State*, (1976) 265 Ind. 635, 639, 358 N.E.2d 134, 136, we explained:

> "When the question of entrapment is raised, the court must make a two-part inquiry: (1) did police officers or their informants initiate and actively participate in the criminal activity; and (2) is there evidence that the accused was predisposed to commit the crime so that the proscribed activity was not solely the idea of the police officials? If the evidence shows police activity absent any showing of predisposition on the part of the accused, entrapment as a matter of law has been established."

In viewing the entrapment defense, then, the focus is properly directed to the accused's predisposition to commit the crime, rather than on the extent of government participation. Thus, if the accused had the predisposition to commit the crime and the police merely afforded him an opportunity to do so, then the defense of entrapment is not available. Ind.Code § 35–41–3–9 (Burns 1979 Repl.); *Drollinger v. State*, (1980) Ind., 409 N.E.2d 1084, 1086; *Williams v. State*, (1980) Ind., 409 N.E.2d 571, 573–74; *Stewart v. State*, (1979) Ind., 390 N.E.2d 1018, 1021; *Cyrus v. State*, (1978) 269 Ind. 461, 463–64, 381 N.E.2d 472, 473–74; *Hutcherson v. State*, (1978) 269 Ind. 331, 335, 380 N.E.2d 1219, 1221; *Hardin v. State, supra*.

■ The facts recited above clearly show ample evidence from which the jury could find beyond a reasonable doubt that appellant had a predisposition to commit the crimes with which he was charged. It is clear that Bennett had stolen the vehicles prior to the time he discussed the sale of them to the police officers. In fact, Bennett worked to persuade the police to buy the vehicles after they indicated they wished to scale down their operation. From the outset of his dealings with Sergeant Hole, Bennett indicated he had access

to great quantities of other items which were available for sale to Hole. Because there were ample facts to support the jury's rejection of appellant's entrapment defense, and because we will not reweigh the evidence, we have no grounds to disturb the jury's finding on this question. *Williams v. State, supra; Hutcherson v. State, supra.*

## II.

■ Prior to the beginning of testimony, appellant filed a motion in limine directed at preventing the admission of the videotapes which police officers made of the transactions involving Bennett. The trial court denied the motion on the ground that Bennett did not show at that time in what manner the tapes would be prejudicial to him. Bennett does not show that he objected to the admission of the tapes at the time they were admitted on any of the grounds he now raises. The denial of a motion in limine does not constitute error unless prejudice is somehow occasioned thereby. The error occurs upon the admission of the challenged evidence, should it be shown that the evidence was improperly admitted and that an objection was made at the time the evidence was offered. *See Norton v. State,* (1980) Ind., 408 N.E.2d 514, 525; *Crosson v. State,* (1978) 268 Ind. 511, 514, 376 N.E.2d 1136, 1139–40; *Lagenour v. State,* (1978) 268 Ind. 441, 449–50, 376 N.E.2d 475, 481.

The videotapes in question showed Bennett in the "buy room" negotiating with Sergeant Hole, and showed the informant, Morris, present as well. Appellant complains that the tapes focus only on his acts, without showing the other circumstances surrounding the appearance in the "buy room." He claims the tapes fail to show that the police did not entrap him and that they therefore did not contribute to prove or disprove the issue of entrapment. Bennett further argues the tapes constituted hearsay, since informant Morris appeared on the tapes but did not appear in person to testify before the jury.

■ The tapes were apparently offered by the State to corroborate the testimony of police officers who were in the "buy room" at the time of the transactions with Bennett. Thus, this was relevant evidence to present in its case in chief, and was not inadmissible merely because it may not have proved every issue in the case. In fact, we think the evidence showing Bennett's part in these transactions was relevant on the question of his predisposition to commit the charged crimes. *See* Issue I, *supra.*

■ Appellant also claims the videotapes constituted hearsay because they were not subject to cross-examination, but he does not claim that informant Morris accused him in any way or testified against him. In fact, Morris did not speak on the tapes. The record reflects that the individual who made the tapes qualified them for the jury; moreover, the trial court did find certain tapes to be inadmissible. The mere assertion on appeal that certain evidence was hearsay in nature does not automatically render it improperly admitted. There is no showing that Bennett raised the hearsay objection at the time the videotapes were offered into evidence, nor that he ever raised the issue during trial or in the motion to correct error. Accordingly, we have nothing presented to us for review on this question. *Morris v. State,* (1979) Ind., 384 N.E.2d 1022, 1025; *Beasley v. State,* (1977) 267 Ind. 396, 403, 370 N.E.2d 360, 364.

■ Bennett further argues that videotapes generally are subject to mishandling or staging by the operator of the audio-visual equipment and, therefore, that this type of evidence is inherently suspect and should be closely scrutinized by the courts. While, as a general proposition, this may be true, appellant here cannot fortify his argument with any showing or evidence of mishandling of the equipment or tapes in this case; nor does he show in any way that the videotapes do not accurately portray the events they purport to demonstrate. Again, there was no claim before the trial court at any stage of the proceedings that the tapes were incompetent for any of the reasons suggested by Bennett now on appeal. Thus, there is no basis for us to

review the admission of the videotapes on these grounds. *Id.*

### III.

Finally, appellant contends that, even if we should find no reversible error in any of the issues he raised above, the combination or cumulative effect of them prejudiced him so extensively that the trial court committed fundamental error in allowing his convictions to stand. This presents no valid argument to us. Since the issues we considered above presented no errors, the combination of them does not change their character.

Bennett further argues certain portions of the State's final argument represented prosecutorial misconduct. From this proposition he argues that fundamental error would be occasioned by allowing the convictions to stand. The record reflects that Bennett did not object to the prosecutor's argument and did not ask the trial court to declare a mistrial or admonish the jury. In addition, appellant did not raise this question in his motion to correct error, but presents the issue for the first time on appeal. This constitutes a waiver of the issue. *E.g., Lyda v. State,* 1979, Ind., 395 N.E.2d 776; *Womack v. State,* (1978) Ind., 382 N.E.2d 939; *Bell v. State,* (1977) 267 Ind. 1, 366 N.E.2d 1156.

Even if we overlook this clear waiver, we do not find that the prosecutor committed an act of misconduct during final argument. The statement in question was as follows:

"Ladies and Gentlemen, this is the last time I will have a opportunity to speak to you therefore, I want to thank you for your services these last several days. Ladies and Gentlemen, you have just seen an example of a common defense tactic. The theory in defense that is the law is all against you you argue the facts to the jury and if the facts are all against the defendant then you argue the law to the jury and if the facts and the law are both against the defendant then you argue against the police, the State of Indiana, that's what we're seeing here. The defendant would have you believe that the people to blame for this whole situation are the police. Sergeant Jerry Hole, Detective Sergeant, Indiana State Police Department, Sergeant Jim Brehmer from the Indiana State Police, Special Agent Gordon Freas from the F.B.I. Defendant would have you believe those are the guys to blame and Albert Bennett was an innocent victim of the wrong deeds done by the police."

Record at 385–86. Bennett contends the prosecutor improperly gave his personal opinion of the evidence.

We do not read this statement in this fashion. While an attorney should not assert his personal opinion as to the defendant's guilt or innocence, *see* Code of Professional Responsibility D.R. 7–106(C)(4), an attorney may properly argue for any position or conclusion based on his analysis of the evidence. *Id.; Flynn v. State,* (1978) Ind.App., 379 N.E.2d 548, 550. The statements in question constituted fair comment by the prosecutor in presenting suggested conclusions the jury might draw consistent with the theory that Bennett was guilty of the charged offenses. Bennett's counsel had the same opportunity to present or argue an alternative analysis of the evidence which was consistent with a theory of innocence. This was precisely the purpose of final argument. We find no act of misconduct here. *See Stanley v. State,* (1980) Ind., 401 N.E.2d 689; *Lyda v. State,* (1979) Ind., 395 N.E.2d 776.

Finding no reversible error, we affirm the judgment of the trial court.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.