## COPPENHAVER v. THE STATE.

[No. 20,080. Filed May 13, 1903.]

CRIMINAL LAW.—*Evidence Before Grand Jury.*—*Continuation After Re-
turn of Indictment.*—A defendant can not complain of the action of
the grand jury in continuing to hear evidence as to matters of
defense after returning an indictment against him, although it
appears as a result of such a course that the witnesses that he
afterwards calls are contradicted by their testimony before the
grand jury. *pp. 543-545.*

SAME.—*Order for Examination of Defendant.*—Where defendant who
was in jail charged with the crime of murder petitioned the court
that a personal examination of himself be made by physicians
for the purpose of ascertaining his mental condition, he was not
prejudiced by a condition in the order that the examination
should be made in the presence of the jailer, it not appearing
that the jailer communicated any information thus obtained to
the prosecuting attorney. *pp. 545, 546.*

SAME.—*Examination of Juror.*—*Conscientious Scruples as to Death Sen-
tence.*—Where a juror on his *voir dire* was asked by the prosecuting
attorney whether he had any conscientious scruples against sen-

tencing a man to suffer death answered that he had not, no error was committed in permitting the prosecuting attorney to ask him further whether, if he should find from all the evidence in the case that defendant was guilty as charged, he could as readily vote to sentence him to death as to life imprisonment if he thought the facts warranted such a finding. *pp. 546, 547.*

CRIMINAL LAW.—*Trial.—Opening Statement.—Misconduct of Counsel.*—In a criminal case where the jury is the judge of the law as well as the facts, it is proper to make a sufficient statement of the law, upon the opening, to enable the jury to appreciate the evidence as it is adduced. *pp. 547, 548.*

SAME.—*Trial.—Misconduct of Counsel.*—No error was committed in the trial of a criminal cause in overruling a motion to set aside the submission because of alleged misconduct of counsel in his opening statement to the jury that certain threats preceding the murder amounted to express malice, since if it was proper for the court to interfere at all it should have been on motion to withdraw the statement and admonish the jury not to consider it. *p. 548.*

SAME.—*Trial.—Misconduct of Counsel.*—A witness who had made the arrest was asked by the defense on cross-examination whether he had ever before known of a person surrendering himself who had committed a crime punishable by death. The witness answered that he had known of one such instance, giving the name. He was then asked whether such person had not been found insane on a trial for murder, to which question an objection was sustained. While counsel for defense was making an offer to prove, the prosecuting attorney asked the witness, in a whisper, if he remembered the sentence of such person, naming the town where he was tried, and the attorney for defense moved to set aside the submission of the cause, assigning as a reason that the prosecuting attorney had prompted the witness. *Held,* that the motion was properly overruled. *pp. 548, 549.*

SAME.—*Trial.—Instruction.—Defense of Insanity.*—An instruction offered in the trial of a criminal cause in which the plea of insanity was interposed as a defense that the words "of unsound mind" as used in the statute include every species of mental unsoundness, arising from whatsoever cause, and must be taken to mean any idiot, *non compos,* lunatic, or monomaniac, or distracted person, that the law recognizes but two classes of persons, the sane and the insane, was misleading and properly rejected. *pp. 549, 550.*

SAME.—*Trial.—Instruction.—Defense of Insanity.—Instructions as to Proceedings After Acquittal.*—It was not error for the court in the trial of a criminal cause in which the defense of insanity was made to refuse to instruct the jury as to the procedure which follows in the event a person charged with a crime is acquitted on the sole ground that he was insane at the time of the commission of the act. *pp. 550, 551.*

From Marion Criminal Court; *Fremont Alford*, Judge.

Orie Coppenhaver was convicted of murder in the first degree, and appeals. *Affirmed.*

*Elmer Marshall, Henry Seyfried* and *C. J. McGroarty*, for appellant.

*C. W. Miller*, Attorney-General, *W. C. Geake, C. C. Hadley* and *L. G. Rothschild*, for State.

GILLETT, J.—Appellant was convicted in the above entitled cause of murder in the first degree, and it was adjudged that he suffer death. In addition to the plea of not guilty, appellant filed a special plea of insanity. To the latter plea the prosecutor replied by a general denial.

The person whom appellant was convicted of murdering was his wife. At the time of the killing, September 9, 1902, they were living apart,—as she had been compelled to leave him,—and she had taken up her residence with her mother. On the day aforesaid, appellant called upon his wife at her mother's home. After a brief conversation, he called his wife into a front room, and a few moments afterwards he fired four shots into her person, and she was found mortally wounded, with her babe in her arms. After firing the shots, appellant ran to a grocery in the neighborhood, and, at his request, the clerk telephoned for the police. When they arrived, appellant announced that he had shot his wife, and added: "It was family trouble. It is pretty tough when a wife is making up another man's bed." This remark, taken in its literal sense, had a basis in fact, since the wife had made the bed of a boarder at her mother's house the evening before the shooting, at a time when said boarder was present, and it appears that appellant may have witnessed this occurrence from the street. It is not shown that appellant had any substantial reason for suspecting that his wife was unchaste, but he was jealous of her, and had previously threatened to kill her. On being arrested, appellant stated that he did not know whether he

had hit his wife or not, "but," he added, "I hope and pray to God that she is dead."

It is clear, in view of the uncontradicted evidence as to the circumstances of the shooting, that appellant was properly convicted if he was criminally responsible, and the hundreds of pages composing the transcript of the evidence attest the fact that the question as to his mental status at the time he shot his wife was thoroughly developed before the jury.

The indictment in this cause was returned September 13, 1902, and appellant immediately entered a plea of not guilty thereto. On September 15, 1902, a person, assuming to act for and on behalf of appellant, filed a verified motion, setting forth in substance that, notwithstanding the return of said indictment by the grand jury, it was hearing evidence as to the mental condition of appellant for the sole purpose of anticipating the defense in said cause, and stating that said proceedings, if permitted, would prevent appellant from having a fair and impartial trial, and would prejudice his defense. Prayer that the court order the suspension of further proceedings in said cause before said grand jury. This motion was overruled, and appellant, after obtaining leave, withdrew his plea of not guilty, and attempted to plead the matter above stated in abatement. A demurrer was sustained to this plea. The action of the grand jury was also assigned as ground for a new trial, and appellant's sisters, May Johnson and Ellen Huber, each made affidavit in support thereof that she was called before the grand jury on September 15, 1902, and required to testify as to the family history and antecedent conduct and conversation of appellant, and also to express an opinion as to his sanity. The only use that the State made on the trial of the testimony of said witnesses before the grand jury was in cross-examining them, and even in these instances there was nothing in their cross-examinations rela-

tive to their prior testimony that tended seriously to discredit them.

The question as to the authority of the grand jury to continue to examine witnesses concerning the commission of a crime after returning an indictment therefor, is really but a moot question in this case. Error must always be predicated on a wrong ruling, but a wrong ruling does not invariably constitute error. An improper decision will not furnish a basis for reversal where there is no room for the inference that it was probably prejudicial. Elliott, App. Proc., §§587, 632. The criminal code provides that, "In the consideration of the questions which are presented upon an appeal, the Supreme Court shall not regard technical errors or defects or exceptions to any decision or action in the court below, which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant." §1964 Burns 1901. While it may be that witnesses, whose time and attention are occupied by a perhaps unwarranted exercise of the inquisitorial powers of the grand jury, may well present to the court the question as to their duty to attend and answer questions after an indictment, based on the subject-matter of the examination, has been returned, yet we do not perceive how the indicted person can ordinarily complain. Even if it appears, as the result of such a course, that the witnesses that he afterwards calls are seriously contradicted by their testimony before the grand jury, it would seem to be a sufficient answer to his complaint that the search is for the truth, and that he has no such peculiar interest in his witnesses that he may successfully complain that they have been interrogated as to the facts in advance of the trial.

It was suggested in argument that the practice of grand juries hearing the evidence of the defense, instead of hearing but sufficient evidence on which to base an accusation, would lead petit juries to assume the existence of the facts presented. We do not think so; but if counsel for appellant

had any such apprehension they should have requested the court to instruct the jury that the return of the indictment should not be treated as evidence of the allegations therein contained.

Prior to the trial, appellant filed a motion that the court allow a personal examination of himself, in the county jail, by two expert physicians, to be selected by himself and his attorneys, for the purpose of ascertaining his mental condition; and he further moved that such examination be had in a private apartment of said jail, and not in the presence of any other person or persons. The court granted the motion for an examination, on the condition, however, that the examination should take place in the presence and hearing of one Jacob Kurtz, a deputy sheriff and jailer, at the county jail wherein appellant was confined. To the latter part of the order appellant excepted, and the question as to the propriety of the limitation in the order is presented in the motion for a new trial as an irregularity in the proceedings of the court, and as an abuse of discretion, whereby appellant was prevented from having a fair trial. The motion for a new trial is supported by the affidavit of one of the persons who, as a physician, made such examination, to the effect that during the two examinations which he and another physician made of appellant said Kurtz kept very near to them, observed every movement made, and listened to every word spoken at said examinations. Facts are further averred in said affidavit tending to show that the room wherein such examinations took place was of such character that such close surveillance was unnecessary; and the affiant then avers, on information and belief, that said Kurtz was personally present and intruded his presence at such examinations at the instigation and procurement of the prosecuting attorney of Marion county, and in pursuance of an order of court procured therefor, for the purpose of informing said prosecuting attorney concerning the details of such

examinations, and thereby anticipating the evidence of the defense, and for the further purpose of hindering and intimidating affiant and his associate in the examination of said defendant.

The fact that appellant was arrested, charged with a non-bailable offense, necessarily impaired his liberty, and justified a careful surveillance of his person. Granting, however, without deciding, that the court should, as a matter of discretion, have so framed its order as to secure to said persons a reasonable degree of privacy during his examination, we are unable to perceive how the act of the jailer prevented appellant from having a fair trial. The record shows that the two physicians who visited appellant pursuant to said order made a thorough examination as to his physical and mental condition, and that they testified fully as to the result of such examination. Said Kurtz was a witness on behalf of the State, but he did not testify to anything that he saw or heard on the occasions in question. It will be observed that the affidavit did not charge, even upon information and belief, that said jailer actually communicated to the prosecuting attorney any information that he had so obtained. The record seems to dispute the affiant's claim that he and his associate were hindered or intimidated by the presence of said Kurtz. We do not perceive wherein appellant was prejudiced by the order complained of, or by the presence of said Kurtz at said examinations.

While a juror was being examined on his *voir dire,* the prosecuting attorney asked him whether he had any conscientious scruples against sentencing a man to suffer death. Upon receiving a negative answer, the prosecuting attorney then asked the juror this question: "So that, if you should find, from all of the evidence in this case, this man to be guilty as charged, I will ask you if you can as readily vote to sentence him to death as you could to sentence him to life imprisonment, if you thought the facts warranted such a finding?" Counsel for the defense objected to the question,

on the ground "that the juror, under the law, has an option of inflicting either punishment, and can not be compelled to state in advance what view he would take in a case of this kind as to the punishment to be inflicted." The objection was overruled, and the juror answered, "I could." The objection of appellant to this line of examination was saved in a number of instances, but the question and objection are substantially the same in each instance. Under the statute it is ground for challenging a juror: "If the offense charged be punishable with death, that he entertains such conscientious opinions as would preclude his affixing the death penalty if the defendant should be found guilty." §1862 Burns 1901. When a jury reaches the conclusion that a person charged with murder in the first degree is guilty of such offense, as he stands charged, there is a matter of pure discretion before the members thereof as to whether death or life imprisonment shall be assessed as the punishment. At this juncture, a willingness to enforce the law is not enough, for the law is enforced in either event, and the prosecution is entitled to a panel of jurors who will not shrink from the assessment of the death penalty, if it appears that it ought to be imposed rather than life imprisonment. *Gross* v. *State,* 2 Ind. 329; *Driskill* v. *State,* 7 Ind. 338; *Stephenson* v. *State,* 110 Ind. 358. The question objected to by appellant was not a model, but the court, ruling in the light of the objection, did not err in its ruling.

During the prosecuting attorney's ·opening statement he spoke of threats preceding an unlawful killing as amounting to express malice. Appellant's counsel first objected to the statement, assigning as a reason that in an opening statement it is not proper to present the law to the jury. The objection was overruled, and counsel for appellant then moved to set aside the submission, a motion that was also overruled. The ground of the objection was not sufficient. In a criminal case, where the jury is the judge of the law, as well as of the fact, it is proper to make a sufficient state-

ment of the law upon the opening to enable the jury to appreciate the evidence as it is adduced. We need not determine as to the authority of the court to correct an erroneous statement of the law in a criminal case by interfering with the course of argument. It will suffice to say that considering the nature of the misstatement, if it was proper for the court to interfere at all, counsel for appellant should have moved the court to withdraw the statement, and admonish the jury not to consider it. An exception can only be taken to an adverse decision of the court upon a matter of law. It can not be taken to the argument of the prosecuting attorney. *Choen* v. *State,* 85 Ind. 209; *Coleman* v. *State,* 111 Ind. 563. The misconduct was not of such a character as to require the setting aside of the submission, in compliance with the motion subsequently made. A like objection and motion was made while the prosecuting attorney was making a statement to the jury regarding the order of developing the evidence on the subject of insanity. For the reasons above stated, we are of opinion that the court did not err in its rulings upon said objection and motion.

A number of exceptions were reserved by appellant to the rulings of the court concerning the evidence. Most of the questions presented arise by reason of exceptions reserved to the sustaining of motions by the prosecuting attorney to strike out certain answers of appellant's witnesses as conclusions. For the most part the rulings of the court were right. We think, however, that the court at times went a little too far in the excluding of opinions relative to matters that it was impossible adequately to describe otherwise, but in each instance the course of examination afterwards was such that we think it may be said that no substantial prejudice resulted from such rulings. The other objections arising upon the evidence are without merit.

While the State was upon its case in chief, and a policeman, named Lowe, who had testified that he had arrested appellant, was on the stand, counsel for the defense asked

him whether he had ever before known of a person surrendering himself, who had committed a crime punishable by death or life imprisonment. The witness answered that he had known of one such instance; that a man named Rooker had so surrendered himself. The examining counsel then asked the witness whether said Rooker had not been found insane on a trial for murder. The State objected to this question and the objection was sustained. Counsel for appellant then asked: "You know, of your own knowledge, what became of Rooker, don't you; that is, at the trial?" The witness answered: "Yes, sir." Appellant's counsel then resorted to the clearly improper course of making an offer to prove, but the court required the offer to be made to the stenographer without the hearing of the jury. While counsel was so engaged, it appears that the prosecuting attorney, addressing the witness in a whisper, asked if he remembered the sentence of Rooker at Noblesville. Counsel for the defense then moved to set aside the submission, assigning as a reason that the prosecuting attorney had prompted the witness. The motion was overruled, and the witness then further answered: "I believe he was found insane, and he was sent to the penitentiary for assault and battery with intent to kill." Appellant's counsel then moved to strike out "the latter part of the answer," and the record states that this motion was sustained. It is now urged that the motion to set aside the submission should have been granted. There are a number of answers to this proposition. It is not shown that appellant was injured; the misconduct of the prosecutor was not sufficiently serious to warrant the setting aside of the submission; and the witness was only prompted as to a point in the subject-matter of an examination that was entirely collateral, and that counsel for the defense ought not to have been pursuing.

It is urged that the court erred in refusing to give instruction number two tendered by appellant. That instruction is as follows: "The words 'of unsound mind,' as

used in the Indiana laws and statutes, include every species of insanity or mental unsoundness, arising from whatsoever cause, and must be taken to mean any idiot, *non compos,* lunatic, monomaniac, or distracted person.    The law of Indiana recognizes but two classes of persons—the sane and the insane; there being no intermediaries, and consequently no such thing as a middle ground or state of partial insanity.    Whether insanity existed at the time of the commission of the crime, and its character and extent, is a question of fact for the jury, to be determined from the evidence; and if, therefore, you find, from the evidence, that the defendant was of unsound mind, to any degree, from any cause, at the time of the commission of the offense charged, he is entitled to an acquittal at your hands."    The above instruction was evidently based, to a considerable extent, on the opinion of this court in *Sage* v. *State,* 91 Ind. 141. This court has a number of times said that it is not every statement of the law found in a law book that is proper to be given in an instruction.    *Garfield* v. *State,* 74 Ind. 60; *Finch* v. *Bergins,* 89 Ind. 360; *Goodwin* v. *State,* 96 Ind. 550, 571, 580.    The language in the Sage case that was made the basis of the instruction refused was made use of in holding that partial insanity is not a defense to crime. The court below fully and fairly instructed the jury upon the subject of insanity as a defense, and appellant was not entitled to an instruction which was calculated to mislead rather than instruct.

Complaint is made that the court refused to instruct as to the procedure that follows in the event that a person charged with crime is acquitted on the sole ground that he was insane at the time of the commission of the act.    It is argued that appellant had the right to have the jury advised that a procedure had been provided so that a dangerous insane person would not be allowed to go at large.    Concerning the duty of the trial judge in instructing the jury as

to the law in a criminal case, it is provided by statute as follows: "In charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict." §1892 Burns 1901. In a case of this kind, we think that counsel for the defense might with propriety in argument have called attention to or read the statute relative to the procedure in case a person is acquitted solely upon the ground of insanity. As a man charged with crime is entitled to the judgment of his peers as to his guilt, it is proper that his counsel should be allowed such reasonable latitude in representing his client that he may fairly persuade the judgment of the average man who presumably sits before him as a member of the jury. The provision of the law concerning a person so acquitted is a consideration that has a proper place in the argument on behalf of the defense in a case of this character. It is not necessary that the court should instruct upon the subject, however, for such matter has nothing to do with the law of the case.

It cannot be said that the verdict of the jury is contrary to law or contrary to the evidence. If the jury could have reached the conclusion that it did upon the evidence before it, even if the evidence on behalf of the State was weak and unsatisfactory, the question as to the effect of the evidence is one of fact; and this court is only authorized, in criminal cases, to pass on questions of law. *Lee* v. *State,* 156 Ind. 541. We do not mean to intimate that the evidence introduced by the State relative to the mental condition of appellant at the time that he shot his wife was weak. Many days were occupied in the hearing of the evidence introduced by the contending parties upon this subject, with the result that many facts and circumstances, together with opinions, professional and lay, could be summoned to the support of either hypothesis,—insanity or moral obliqueness. Upon this condition of the record, the jury having reached the conclusion that appellant was not

insane, and the trial judge, who heard and observed the witnesses, having approved the result, the verdict rests upon a foundation far too secure for this court to disturb it.

We have considered the questions presented in this case upon the merits, but it is not improper to say that as there was no exception to the overruling of the motion for a new trial, the real basis of every error assigned, and as the instructions given and refused are not incorporated in a bill of exceptions, we could not have avoided an affirmance, even if the rulings counsel discuss were erroneous.

Judgment affirmed.