**Michael AKINS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 580S127.**

Supreme Court of Indiana.

Dec. 22, 1981.

Rehearing Denied March 9, 1982.

Charles L. Berger, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of murder, Ind.Code § 35–42–1–1 (Burns 1979) and was sentenced to a term of thirty (30) years imprisonment. This direct appeal seeks review upon the following issues:

(1) Whether the trial court erred in granting continuances, upon the State's motions, for unavailability of a witness who had not been named upon the information.

(2) Whether the trial court erred in denying Defendant's motion for discharge for delay in bringing him to trial.

(3) Whether the trial court erred in admitting autopsy photographs into evidence.

(4) Whether the trial court erred in admitting into evidence a published ballistics article and accompanying testimony of the State's ballistics expert, over the defendant's objection of hearsay.

(5) Whether the trial court erred in admitting evidence of certain statements attributed to the decedent, over Defendant's objection of hearsay.

(6) Whether the trial court erred in admitting certain physical evidence taken from the defendant at the time of his arrest, over his objection that his warrantless arrest had been unlawful as unsupported by probable cause.

(7) Whether the trial court erred in admitting into evidence tape recordings and written statements and transcriptions over Defendant's objection of hearsay.

(8) Whether Defendant was entitled to a new trial upon discovery that a State's witness had been determined to be incompetent to stand trial upon an unrelated charge.

(9) Whether the trial court erred in refusing to give Defendant's tendered instruction advising that it was the duty of the jury to reconcile all the evidence with the presumption of his innocence, if possible and to resolve doubts in his favor.

(10) Whether the guilty verdict was sustained by the evidence.

\* \* \*

### ISSUE I

Defendant contends that the trial court erred in granting two motions by the State for continuance, both of which were premised upon the unavailability of a material witness. It is his position, in this appeal, that the name of the witness, Mildred Southward, had not been endorsed upon the information and that Ind.Code § 35–3.1–1–

2(c), therefore proscribes the grant of a continuance for the State.

■ Defendant was arraigned on March 2, 1979. He expressly waived his right to a "speedy trial", and the matter was set for trial for June 18, 1979. On June 8, the State filed a written motion for a continuance, because of the unavailability of Southward, and it was granted on June 15, 1979. The defendant objected to the grant of such continuance, not by reason of the statutory proscription but, rather, upon the contention that Southward was not a material witness and that the testimony to be anticipated from her was available from other witnesses. The issue which the defendant here seeks to present, therefore, is not available for review. *Phelan v. State*, (1980) Ind., 406 N.E.2d 237, 239; *Bell v. State*, (1977) 267 Ind. 1, 366 N.E.2d 1156.

Upon granting the State's aforementioned motion for a continuance, the court set the trial for July 9, 1979, but on that date the judge, sua sponte, re-set the trial for July 23rd, because of the death of his father.

On July 13, 1979, the State again filed a motion for a continuance, because of the unavailability of Southward, who was in the hospital and was to undergo major surgery during the week of July 23rd. On this occasion, Defendant protested the grant of a further continuance upon the same grounds urged in this appeal, *i.e.*, Ind.Code § 35–3.1–1–2(c), which is as follows:

"An Indictment, or information, shall have stated upon it the names of all the material witnesses. Other witnesses may afterwards be subpoenaed by the state, but unless the name of a witness be stated on the indictment or information at the time it is filed, no continuance shall be granted to the state on account of the absence of such witness."

■ Assuming that it was error for the trial court to grant the continuance, in view of the statute, it does not necessarily follow that a reversal is required. Although a continuance under such circumstances is proscribed, the statute makes no provision for sanctions *per se*. The purpose of the statute is to compel compliance with witness disclosure requirements, and the statute is, itself, a provision for sanctions for failure to disclose. The action appropriate for an appellate court when, as here, the trial court has refused to impose the sanction must be determined in context.

■ The defendant was taken into custody on January 28, 1979 and charged on February 2nd. On July 19th, the State filed a supplement to its July 13th motion and therein alleged that Defendant had known of the name, address and anticipated testimony of the witness since March 2nd. Although he has not, by his brief, acknowledged the correctness of the self-serving allegation, neither has he disputed the State's allegation of such information set forth in its answer brief. In any event, it cannot be disputed that the defendant was fully informed concerning the witness and the anticipated testimony from and after June 12th, when he filed his written objections to the State's first motion for a continuance. The trial did not commence until October 1, 1979, hence Defendant had not less than three and one-half months notice and could not have been substantially harmed by the State's omission of the witness' name from the information.

## ISSUE II

Defendant also assigns as error the denial of his motion for discharge, under Ind.Rules Cr.P. 4, by reason of the delay in bringing him to trial. He premises his entitlement to discharge upon both a detention in jail, without trial, for a period in excess of six (6) months from the filing of charges and upon a delay in excess of seventy (70) days in bringing him to trial following his filing of a motion for an early trial.

Criminal Rule 4(A) makes provision only for the release of the accused upon his own recognizance for a delay in excess of six (6) months in bringing him to trial. It does not provide for discharge.

■ Criminal Rule 4(B)(1) does provide for discharge for delay in excess of seventy

(70) days from the date of filing a motion for an early trial. However, there was no such delay here. It is Defendant's claim that he made his early trial motion on June 8, 1979, but the record does not bear him out. The record of June 8th is as follows: "The defendant indicated he will file a motion effective this date withdrawing waiver of speedy trial; * * *." We presume this was an expression of an intention to withdraw the waiver, previously mentioned herein, voiced at the arraignment. However, we have no way of knowing which of the provisions of Criminal Rule 4 he had waived. Assuming that the initial waiver was of his right to file a motion for an early trial, its withdrawal, at the most, would only have reinstated his right to file such motion. It would not have eliminated the necessity for affirmative action on his part to commence the running of the time limitation. The motion was filed on July 20th, and the seventy (70) day period expired on August 29th, rather than on August 17th, as contended, and Defendant's motion for discharge filed on August 21, 1979 was properly overruled.

We note that the trial did not commence until October 1, 1979, and the record is not clear with respect to other trial date settings and continuances. However, the error assigned with respect to Criminal Rule 4 is addressed to the trial court's action in overruling the motion for discharge filed on August 21st. It does not appear that there is any issue with respect to delays that occurred subsequent to the filing of that motion. We also note that on August 20th, the parties agreed to the vacating of a September 10th trial date and a trial setting of October 1st. On this state of the record, we find no error.

## ISSUE III

Seven autopsy photographs were admitted into evidence over objection that they would inflame the minds of the jury and that they were repetitive.

 The photographs in question are unpleasant to view as they depict the nature and extent of wounds of the decedent immediately following her murder. But they were not rendered inadmissible solely on the basis that they were gruesome and repetitious. *Brandon v. State*, (1978) 268 Ind. 150, 374 N.E.2d 504. The photographs evidenced the cause of death and that the decedent had sustained numerous wounds. The defendant, did not demonstrate that these photographs would inflame the passions of the jury. Without an imbalance between this relevance and a clear showing of a tendency to influence the jury improperly, the trial court's determination will not be disturbed. *Bates v. State*, (1978) 267 Ind. 8, 366 N.E.2d 659, 660.

## ISSUE IV

 Defendant contends that the court improperly admitted, over his objection of "hearsay," State's Exhibit No. 67 and the testimony of John Althoff, which testimony, he asserts, was dependent upon the exhibit. Althoff was a member of the Evansville Police Crime Scene Technical Unit and was offered by the State as a ballistics' expert. Apparently, the conclusions drawn by him were, in part at least, dependent upon the content of Exhibit No. 67, which was an article entitled "Identification of .22 caliber Rimfire Ammunition Suitable for Gunshot Residue Determination" and had been taken from a police laboratory periodical. It appears from the meager information given to us that the court erred. However, we have not been apprised of the content of Althoff's testimony or the content of the exhibit. If prejudicial error had occurred, it has not been presented by Defendant's brief. Before an appellant is entitled to a reversal, he must show affirmatively that there was error prejudicial to his substantial rights. He must show how he was harmed. We will not search the record to find grounds for reversal. *Ross v. Clore*, (1947) 117 Ind.App. 548, 74 N.E.2d 747. Our rules on briefing make it clear that the argument must provide a clear showing of how the issues and contentions in support of them *relate to the particular facts of the case under review.* Ind.Rules A.P. 8.3(A)(7).

We also note that there was eyewitness testimony that the Defendant shot the decedent.

### ISSUE V

Defendant next contends that the trial court erred in overruling his pre-trial motion-in-limine addressed to statements attributable to the decedent and in admitting evidence of such statements, at trial, over his objection that they constituted inadmissible hearsay. We decline to consider these assignments for several reasons.

■■■ The ruling upon the motion-in-limine is not reviewable upon appeal. The office of such a motion is not to obtain a final ruling upon the admissibility of evidence. *State of Indiana v. Church of The Nazarene etc. et al.*, (1978) 268 Ind. 523, 377 N.E.2d 607; *Stubblefield v. State*, (1979) Ind., 386 N.E.2d 665; *Norton v. State*, (1980) Ind., 408 N.E.2d 514. Harmful error, if any, occurs when the questioned evidence is admitted at trial, and if error in its admission is to be available for appellate review, a proper objection must be entered at the time it is offered. *Young v. State*, (1980) Ind., 409 N.E.2d 579.

■■ Error assigned for appellate review must also be the same as that presented by the motion to correct errors. *Finch v. State*, (1975) 264 Ind. 48, 338 N.E.2d 629; *Edwards v. State*, (1976) 265 Ind. 239, 352 N.E.2d 730. The motion to correct errors did not address the court's rulings in admitting the testimony at trial but assigned only the overruling of the motion-in-limine.

■■ If the admission of the evidence were properly before us we, nevertheless, would be unable to review the claim. Defendant charges that the statements attributable to the decedent came in through the mouths of six witnesses. He has not, however, cited us to the pages in the transcript identifying the testimony and the objections. He has dwelt at length upon the rule of hearsay evidence, but he has not, in the argument portion of his brief, apprised us of the content of the hearsay statements or of the context in which they were made and

admitted. He has not articulated how he was harmed by the admission of such evidence. For all that we can discern from the brief, the evidence may have been merely cumulative of other undisputed and properly admitted evidence, *Jackson v. State*, (1980) Ind., 402 N.E.2d 947, or such as to have made no contribution to the verdict. *Candler v. State*, (1977) 266 Ind. 440, 363 N.E.2d 1233.

" * * * Error must always be predicated on a wrong ruling, but a wrong ruling does not invariably constitute [reversible] error. An improper decision will not furnish a basis for reversal where there is no room for the inference that it was probably prejudicial." *Coppenhaver v. State*, (1903) 160 Ind. 540, 544, 67 N.E. 453.

Our briefing requirements are set forth under Appellate Rule 8 and must be carefully adhered to if we are to be aided in our task. Specificity in the presentation of issues in the context of the case must be required. The transcript in this appeal consists of more than 1700 typewritten pages. It is unrealistic to think that counsel may, by a mere suggestion of error, thrust upon the Court the burden of independently exhausting the possibilities that he may be correct.

### ISSUE VI

Defendant next contends that the trial court improperly admitted into evidence the defendant's coat and particles removed from his clothing from which these articles, according to the defendant, had been seized pursuant to an unlawful arrest.

The Fourth Amendment does not permit a warrantless arrest and search in the absence of probable cause. *New York v. Belton*, (1981) —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768. This Court has defined probable cause to be "those facts and circumstances known to the arresting officer that would warrant a reasonable man to believe that a crime had been committed by the suspect." *Pawloski v. State*, (1978) 269 Ind. 350, 380 N.E.2d 1230.

In this case, several friends and relatives of the decedent arrived at the hospital shortly after the ambulance carrying her body had arrived. Upon questioning by a security guard at the hospital, each member of this group described in an excited and spontaneous manner that he believed the defendant had killed the decedent. The security guard later testified at a suppression hearing that he had believed three or four of these persons who had said that they had actually witnessed the shooting. Furthermore, the guard had known that one of these informants was a reliable police officer, who, upon occasion, had served in an arresting capacity. The guard therefore had had an opportunity to acquaint himself with the mutually corroborating informants and to assess their statements and the circumstances surrounding them. An immediate decision concerning an arrest was called for when the defendant appeared on the scene at the hospital.

Although the Fourth Amendment provides reasonable safeguards for defendants, it is also tolerant of quick ad-hoc judgments by arresting officers when they act, with reasonable caution and prudence, upon their belief that sufficient probable cause exists to arrest the defendant. *United States v. Robinson*, (1973) 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427.

An arrest of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment, and any following search of clothing needs no further justification. *United States v. Edwards*, (1974) 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771. *Gustafson v. Florida*, (1973) 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456; *Hatcher v. State*, (1980) Ind., 410 N.E.2d 1187.

Since the arrest of the defendant was proper and custodial search which followed it was reasonable, there was no error in admitting these exhibits.

## ISSUE VII

Defendant contends that State's exhibits Nos. 82, 83, 84 and 86, which were admitted over objection, were inadmissible hearsay. The exhibits, in order, were the deposition of Clarence Smith, who was testifying as a State's witness; an unsigned typewritten statement purporting to be a transcription of a statement previously given to the police by the witness, Smith, a tape recording of the aforementioned statement from which the typewritten transcription was made, and a signed statement previously given to the police by the witness, Suggs.

The exhibits apparently were offered for impeachment purposes. Defendant appears to argue that there had been no proper foundation for an impeachment laid. Again, we are unable to review this assignment, as the brief does not apprise us of the content of the exhibits (which we understand were statements) or how their admission may have harmed the defendant.

## ISSUE VIII

Defendant next contends that the court erred in refusing to grant a new trial following the discovery that an important State's witness had been declared incompetent to stand trial in his own unrelated case.

On February 12, 1980, the Defendant filed a motion to correct errors. The next day, the witness Robert Suggs, who had given testimony supporting the State's case, was declared incompetent to stand trial and was then committed to a state hospital. Defendant thereupon filed a motion for a new trial on the basis of this newly discovered evidence that Suggs was insane. He asserted that Suggs was, therefore incompetent to testify at his trial.

It must be first noted that the tests for witness competency and for competency to stand trial are things apart. The witness was not incompetent to testify, although his credibility might have been subject to scrutiny.

The criteria for determining whether one is entitled to a new trial by reason of newly discovered evidence are set forth in *Emerson v. State*, (1972) 259 Ind. 399, 407, 287 N.E.2d 867 and *Torrence v. State*, (1975) 263 Ind. 202, 328 N.E.2d 214. Among

them are requirements that the newly discovered matter was not discoverable by due diligence, that it is not merely impeaching and that its disclosure at a retrial would probably produce a different result. The discovery relates only to the witness' credibility and thus fails to qualify.

## ISSUE IX

██ The substance of defendant's tendered instruction was covered by instructions Nos. 5, 6 and 7 given by the court. These instructions were supported by the evidence in the record and correctly stated the law. *Spears v. State*, (1980) Ind., 401 N.E.2d 331. It was, therefore, not error to refuse to give the defendant's tendered instruction.

## ISSUE X

Defendant's sufficiency of the evidence challenge presumes the improper admission of evidence hereinbefore noted.

However in view of our determination of such alleged errors contrary to Defendant's contention, this challenge is without foundation.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., concurs in result with opinion.

HUNTER, Justice, concurring in result.

I concur in the majority's resolution of Issues II through X, as well as the result ultimately rendered by the Court. I respectfully decline to join the analysis which the majority has employed in its disposition of·Issue I, however; that analysis concerns defendant's contention that the trial court erred when it granted the state's motion for a continuance based on the absence of a material witness which the state had failed to list on the charging information.

Initially, I note the majority has prefaced its analysis of the claim with the caveat "Assuming it was error for the trial court

to grant the continuance . . . ." We need indulge no assumptions. Clearly it was error and this Court should say so. The controlling statute, Ind. § 35–3.1–1–2 (Burns 1979 Repl.), is unambiguous. The statute, which governs the form and contents of charging instruments, reads in pertinent part:

"(c) An indictment, or information, shall have stated upon it the names of all the material witnesses. Other witnesses may afterwards be subpoenaed by the state, but unless the name of a witness be stated on the indictment or information at the time it is filed, *no continuance shall be granted to the state on account of the absence of such witness*." Ind.Code § 35–3.1–1–2(c), *supra* [emphasis added].

In the face of the emphasized language, the trial court's error is not disputable.

My primary concern, however, is with the rationale by which the majority deems the error harmless. Its test, I fear, is no test at all and erodes the essence of subsection (c).

It is always true that a continuance will provide a defendant with the opportunity to prepare for the testimony of a material witness who has not been listed on the information. In finding the error harmless on this basis, the majority characterizes subsection "(c)" as designed to establish "witness disclosure requirements."

The responsibility to reveal material witnesses in the charging instrument, however, is merely one component of a broad range of disclosure duties imposed on the state in Ind.Code § 35–3.1–1–2, *supra.*

The array of information which the state is required to disclose serves to insure the defendant is fully apprised of the charge against him, as well as the sources of testimony upon which it is based. The prohibition against the state's ability to obtain a continuance based on the absence of a material witness not listed on the information is the "teeth" of the statute; significantly, it is the only sanction available to a defendant to enforce compliance with the requirement that material witnesses be listed on the charging instrument.

That is so by virtue of our case precedent, wherein we have repeatedly held that a material witness may be permitted to testify even though the state has failed to list his or her name on the charging instrument, as required by statute. *See, e.g., Denton v. State,* (1965) 246 Ind. 155, 203 N.E.2d 539; *Stevens v. State,* (1959) 240 Ind. 19, 158 N.E.2d 784; *Ruffenbarger v. State,* (1921) 190 Ind. 616, 131 N.E. 514. In those cases, we have predicated our conclusion on the fact the only consequence of noncompliance with the witness disclosure requirements is that the state cannot obtain a continuance.

In order to perpetuate compliance with the witness disclosure requirement and foreclose any opportunity for abuse and gamesmanship in the statute, a stricter burden should be placed on the state to show an erroneously granted continuance does not warrant reversal. The state should be required to bear the burden of showing: (1) the witness was in fact "material" and presented testimony not cumulative in nature; (2) the failure to list the witness on the charging instrument was inadvertent or otherwise justifiable; and (3) the delay obtained was not a dilatory tactic and was necessitated by circumstances beyond the state's control. In conjunction with the responsibility of the state to satisfy these considerations, the defendant should be permitted to show how, if at all, the delay harmed his presentation of his case or otherwise prejudiced him. On a case-by-case basis, this balancing test, with its focus on the state's burden to establish the harmless nature of the error it has precipitated, would insure the witness disclosure requirement of Ind.Code § 35–3.1–1–2, *supra*, retains meaning and enforceability.

Here, the record reveals that Mildred Southward was a material witness in that she witnessed the shooting-at-issue. She was not listed on the information because her existence as a material witness had not been discovered by the state until after the charge had been filed. And her absence was necessitated by the fact of Southward's hospitalization and need for major surgery, a circumstance beyond the state's control. In. addition, the record does not indicate

defendant was prejudiced in any way by virtue of the continuance.

On the basis of this rationale, the trial court's error in granting the continuance was harmless. Consequently, I concur in the conclusion of the majority that defendant's conviction should be affirmed.

Concur in result.