## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Nov 20 2015, 7:47 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| G. Allen Lidy | Gregory F. Zoeller |
| Mooresville, Indiana | Attorney General of Indiana |
| | |
| | Ellen H. Meilaender |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Larry J. Truesdale,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

November 20, 2015

Court of Appeals Case No.
60A01-1503-CR-104

Appeal from the Owen Circuit
Court

The Honorable Lori Thatcher
Quillen, Judge

Trial Court Cause No.
60C01-1205-FB-331

**Bailey, Judge.**

# Case Summary

[1] Larry J. Truesdale ("Truesdale") appeals his convictions for two counts of Sexual Misconduct with a Minor, as Class B felonies;[1] one count of Sexual Misconduct with a Minor, as a Class C felony;[2] and three counts of Child Seduction, as Class D felonies;[3] for sexual contact he had with his stepdaughter, L.C., during her teenage years. We affirm.

# Issues

[2] Truesdale presents three issues for our review, which we restate as:

I. Whether the trial court properly excluded evidence that the victim purportedly made a prior false accusation of sexual abuse;

II. Whether the trial court abused its discretion in admitting Truesdale's statement to his wife that he had sexual contact with the victim; and

---

[1] Ind. Code § 35-42-4-9(a)(1). Effective July 1, 2014, this offense is now a Level 4 felony. Throughout this opinion, we refer to the versions of the statutes in effect at the time of Truesdale's offenses.

[2] I.C. § 35-42-4-9(b)(1).

[3] I.C. § 35-42-4-7(h). The State charged Truesdale with committing this offense between October 2008 and October 2010. The statute was amended in 2009 and the substantive offense of which Truesdale was convicted was moved to Subsection (k). *See* I.C. § 35-42-4-7(k) (Supp. 2009).

III. Whether the trial court abused its discretion in admitting improper vouching testimony by a trained forensic child interviewer.[4]

# Facts and Procedural History

Truesdale was born in 1969. L.C. was born in 1992. Truesdale began dating L.C.'s mother, Anna, when L.C. was a baby. Truesdale and Anna subsequently married, and the couple lived with L.C., the couple's two children, and Truesdale's daughter from a previous relationship, in a four bedroom home in Owen County.

When L.C. was approximately twelve or thirteen years old, Truesdale kissed L.C. on the mouth and fondled her breasts and genitals while L.C. was sitting with him in a rocking chair in the family home. Thereafter, Truesdale began having sexual contact with L.C. on an almost daily basis. Truesdale would masturbate while kissing and fondling L.C.'s body. He also had L.C. touch his penis until he ejaculated. When L.C. was fourteen or fifteen years old, Truesdale began regularly engaging in oral sex with L.C. Truesdale would place his mouth on L.C.'s genitals, have L.C. place her mouth on his penis, and sometimes engaged in these acts simultaneously. Truesdale told L.C. not to tell anyone about the sexual contact because "no one would believe [her]" and "if it

---

[4] Truesdale also raises a fourth issue: whether the trial court's evidentiary rulings cumulatively worked to deny him a fair trial. Truesdale presents no argument or citations to support this argument; consequently, it is waived. *See* Ind. Appellate Rule 46(A)(8). In any case, because we find only harmless error on one issue, we need not address the cumulative effect of the alleged errors.

came out, [they] would both go down and everyone would hate [them]." (Tr. 146.) L.C. was afraid to disclose the abuse.

[5] The contact often began under the guise of L.C. giving Truesdale a back or leg massage, which then escalated to sexual activity. At one point the massages occurred in the master bedroom with the door shut. After Anna discovered the bedroom door locked while Truesdale and L.C. were alone inside, Anna insisted that the door remain open because "I don't think it's proper for a – a father and daughter . . . to be behind closed doors." (Tr. 244.). During L.C.'s teenage years, Anna also observed Truesdale going into the bathroom while L.C. was bathing. Anna instructed Truesdale to stop. On another occasion, Anna walked into L.C.'s bedroom and discovered L.C. lying on the bed and Truesdale kissing L.C.'s stomach. L.C.'s pants were pulled down exposing some pubic hair. Because Anna immediately felt "[t]he whole situation was wrong" and "inappropriate" (Tr. 231) and "didn't look right" (Tr. 232), she confronted Truesdale and L.C., both of whom denied sexual activity was occurring. Afterwards, Anna regularly asked L.C. if anything sexual was happening with Truesdale, but L.C. always denied it.

[6] Other family members also were troubled by Truesdale's behavior toward L.C. L.C.'s maternal grandmother, Mary Hefley ("Hefley"), was concerned that Truesdale treated L.C. – who he called "his little Anna" (Tr. 296) – "more like a wife." (Tr. 297.) Both Hefley and L.C.'s maternal aunt, Kimmy, each asked L.C. if Truesdale had an inappropriate relationship with her. L.C. denied it both times.

[7] The sexual fondling and oral sex continued after L.C. turned eighteen in late 2010, but stopped by April 2011. After L.C. graduated from high school in June 2011, she moved to live with her father, Steve, and stepmother, Dawn. In January 2012, when L.C. was nineteen years old, she disclosed the sexual abuse to Dawn and then made a police report. Owen County Sheriff's Department Deputy Darin Crum ("Deputy Crum") interviewed L.C., Anna, and other family members as part of the investigation. Also in February 2012, a trained child forensic interviewer interviewed L.C.

[8] On May 30, 2012, the State charged Truesdale with two counts of Sexual Misconduct with a Minor, as Class B felonies (Counts 1 and 2); one count of Sexual Misconduct with a Minor, as a Class C felony (Count 3); and three counts of Child Seduction, as Class D felonies (Counts 4 through 6).[5]

[9] On August 29, 2014, Truesdale filed with the trial court a notice of intent to offer evidence that L.C. made a prior false accusation of sexual abuse. Truesdale also filed a motion in limine, seeking to exclude a statement Truesdale made to Anna that he had engaged in sexual activity with L.C. The trial court first heard evidence and argument on the motions on October 31,

---

[5] In Counts 1, 2, and 3, the State alleged that Truesdale performed oral sex on L.C., caused L.C. to perform oral sex on him, and fondled L.C., respectively, when she was fourteen and fifteen years of age. In Counts 4 through 6, the State alleged that Truesdale engaged in the same acts when L.C. was between sixteen and eighteen years of age.

2014 and held a second hearing on November 26, 2014. The court then denied both motions.

[10] On January 22 and 23, 2015, a jury trial was held, at the conclusion of which the jury found Truesdale guilty of all charges. On February 23, 2015, the court sentenced Truesdale to an aggregate term of thirty years in the Indiana Department of Correction, with five years suspended to probation. Truesdale now appeals his convictions.

# Discussion and Decision

## Prior False Accusation

[11] Truesdale first argues that the trial court erred in excluding evidence that L.C. made a prior false accusation of sexual abuse.

[12] Under Indiana Evidence Rule 412, commonly known as the Rape Shield Rule, evidence of a victim's or witness's prior sexual conduct is generally inadmissible, subject to a few delineated exceptions. Evidence that a complaining witness made prior false accusations of rape does not, however, constitute prior sexual conduct under Rule 412. *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999). Because such evidence is offered for impeachment purposes to show the complaining witness previously made false accusations of sexual misconduct, the evidence is more properly understood as verbal, not sexual, conduct. *Id.* at 826-27.

[13]     Evidence of prior false accusations of sexual misconduct may be admitted if (1) the complaining witness admits he or she made a prior false accusation, or (2) the accusation is demonstrably false. *Id.* at 828 (citing *Stewart v. State*, 531 N.E.2d 1146, 1149 (Ind. 1988.) "Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved." *Candler v. State*, 837 N.E.2d 1100, 1103 (Ind. Ct. App. 2005), *reh'g denied*. Generally, where the admission of evidence is predicated on a factual determination by the trial court, we review the court's ruling under a clearly erroneous standard. *Id*.

[14]     In this case, L.C. did not admit to making a prior false accusation of sexual abuse.[6] Truesdale submitted as an offer of proof Anna's deposition testimony that L.C. accused a neighbor of improperly touching her when she was approximately seven or eight years old. Anna testified that L.C. later admitted the allegation was a lie and apologized to Anna for lying about it. Anna thought some investigation occurred, but was unsure of which authorities were involved. Anna also stated that as a result of L.C.'s allegation, the family attended therapy sessions together.

---

[6] L.C. admitted to having indirect knowledge through other family members that she made a prior accusation of sexual abuse as a young child. But L.C. did not have direct memory of the incident, any subsequent report, or counseling sessions she attended afterwards. Nor did L.C. admit that the prior allegation was false. To the contrary, family members told L.C. that the therapist who L.C. saw at the time "felt like something had happened to [L.C.] when [she] was younger" but thought she "was just suppressing it." (Exhibit 3, 18.)

[15] In response, the State introduced testimony from Sonya Seymour, a local office director for the Department of Child Services ("DCS"), whose search of DCS's statewide database yielded no abuse reports involving L.C. during the relevant time period. Dan McBride, an investigator for the Owen County Prosecutor's Office, also testified that he did not find any Hendricks County[7] law enforcement reports involving sexual abuse allegations made by L.C. during that time frame. The State also offered prospective testimony from L.C.'s father, Steve, that the therapist L.C. saw after the prior allegation "indicated to him that [the therapist] felt like something had happened to [L.C.], but [L.C.] was not forthcoming about what and [the therapist's] ability to help her as a result of that was limited." (Tr. 70.)[8] The trial court accepted the proffered statement by agreement of the parties. At the conclusion of the hearing, the court held that Truesdale's evidence of L.C.'s prior allegation should be excluded, finding simply "I'm not even sure it was made." (Tr. 75.)[9]

[16] Here, Anna's testimony did not establish when, whether, and to whom L.C.'s alleged prior accusation was made. There were no DCS or police reports of the alleged abuse. Moreover, there was conflicting testimony as to whether L.C.

_____

[7] The family lived in Hendricks County at the time of the alleged molestation.

[8] Steve was not present at the hearing because the State thought the hearing was limited to a different issue and had not subpoenaed Steve to testify about the prior accusation. The defense agreed to the admission of Steve's statement, as summarized by the prosecuting attorney, rather than recess to call Steve to testify.

[9] At trial, Truesdale failed to make an offer of proof regarding the prior false accusation. After resting his case, Truesdale moved to re-open his case-in-chief and make an offer of proof consisting of Anna's testimony and the evidence previously presented at the pre-trial hearings. The State did not object. The court granted the motion, then excluded the evidence of the alleged prior false accusation.

lied about the allegation or merely was not "forthcoming" about the details. Based on this evidence, Truesdale failed to show that L.C. made a prior allegation, disavowed a prior allegation, or that the allegation was demonstrably false. *See Fugett v. State*, 812 N.E.2d 846, 849-50 (Ind. Ct. App. 2004) (holding that trial court did not err in excluding evidence that child molesting victim made a prior false allegation where there was conflicting testimony about the prior allegation and no police report of it).

[17] The trial court did not err in excluding Truesdale's evidence that L.C. allegedly made a prior false accusation of sexual abuse.

## Truesdale's Statement

[18] Truesdale next contends that the trial court erred in denying his motion in limine and abused its discretion in admitting at trial his statement to Anna that he had sexual contact with L.C.

[19] A trial court's ruling upon a motion in limine is not reviewable upon appeal. *Akins v. State*, 429 N.E.2d 232, 237 (Ind. 1981). The purpose of a motion in limine is not to obtain a final ruling upon the admissibility of evidence. *Id.* Harmful error, if any, occurs when the questioned evidence is admitted at trial, not when the motion in limine is denied. *Id.* To preserve an error in the admission of evidence previously challenged in a motion in limine, a proper objection must be entered at the time the evidence is offered. *Id.*

[20] A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Remy v. State*, 17 N.E.3d 396, 399 (Ind. Ct. App. 2014), *trans. denied*.

A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it or when the court has misinterpreted the law. *Id.*

[21] Relevant evidence is generally admissible. Ind. Evidence Rule 402. However, the court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice to a party. Evid. R. 403. Under Rule 404(b), evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Evid. R. 404(b)(1). However, this evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2). Rule 404(b) "is designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so called 'forbidden inference.'" *Hicks v. State*, 690 N.E.2d 215, 218-19 (Ind. 1997).

[22] At trial, the State asked Anna about certain statements Truesdale made to her after L.C. reported the abuse to police. Anna testified that during a phone call she confronted Truesdale and asked him whether he did it, and why. When the State asked about Truesdale's response, Truesdale objected:

> I'm going to object, Judge, based upon a prior motion filed in this case. I believe its [sic] 404(b). The evidence – evidence of uncharged misconduct and it is evidence that is outside the scope of the accusations herein. The testimony – the prospective testimony that this witness is going to make I'm making my

contemporaneous objection based upon a prior record in this – in this Court.

(Tr. 250.) In response, the State asked that the court "incorporate all of our earlier arguments and positions" raised in previous filings and hearings. (Tr. 250.) The trial court then overruled the objection and admitted Anna's testimony that "he said something did happen, but you need to talk to [L.C.] about it." (Tr. 252.)

[23] Prior to trial, Anna's statements and testimony about Truesdale's admission were contradictory. During a February 2012 interview with Deputy Crum, Anna stated that Truesdale admitted that he had sexual contact with L.C., but they did not have sexual intercourse and the contact only occurred after L.C. turned eighteen years old. Then during a 2013 deposition, Anna testified that Truesdale admitted he "messed around" sexually with L.C., but did not have intercourse. (Exhibit A, 73.) However, Anna specifically testified that Truesdale did not say it was after L.C. was eighteen.[10]

---

[10] Anna's deposition testimony in answer to the State's questions was as follows:

Q.    Well, I had written down here that you told [Deputy Crum] that Larry admitted to you that he had had sexual relations with . . [ . . . ] . . [L.C.] but that it happened after she was eighteen.

A.    Okay. Now I don't know how old she was, and I told [Deputy Crum] the same thing. I don't know how old she was.

[. . . .]

Q.    What did he tell you about it?

A.    He told me on the phone that day that there was no sex. They did not have sex. They never had sex.

Q.    Sexual intercourse you mean?

[24] The basis of Truesdale's motion in limine was that if Truesdale admitted only to having sexual contact with L.C. after L.C. was eighteen years old, the evidence was either irrelevant or relevant but extremely prejudicial. At the hearing on the motion, Truesdale also argued that any such admission would be inadmissible under Rule 404(b) if only offered to show his propensity to commit the charged crimes.

[25] At trial, Truesdale raised a Rule 404(b) objection based upon the record previously developed in response to the motion in limine. But Anna's trial testimony made no reference to L.C.'s age. At trial, she attributed to Truesdale only the vague statement that "something did happen" without further qualification. Anna's trial testimony thus did not raise the Rule 404(b) issue Truesdale identified in the motion in limine hearing, which was also the basis for his trial objection.

[26] After the statement was admitted, the State questioned Anna about her previous statements, including that Truesdale only admitted to sexual activity

---

A.	They had messed around.
Q.	Okay.
A.	That was the words he used. Messed around.
	[. . . .]
Q.	Did he tell you how old she was when he messed around with [L.C.]?
A.	No, he did not.
Q.	Okay. So he didn't say that it was after she was eighteen?
A.	No, he didn't. We had not really talked . . discussed anything, and he won't talk to me about any of it.

(Exhibit A, 72-73.)

with an adult L.C. But Truesdale did not object to this line of questioning. "It is well recognized that, generally, to preserve error, the party needs to either make an appropriate proffer of the evidence at trial or an objection thereto." *State v. Luna*, 932 N.E.2d 210, 213 (Ind. Ct. App. 2010). Anna eventually testified again that the substance of Truesdale's statement to her was that "yes, things had happened" and that "things" meant "non-sexual intercourse sexual activity." (Tr. 255.)

[27] Based on this record, we cannot say the trial court abused its discretion in admitting Truesdale's vague statement that "something did happen," where (1) the contemporaneous 404(b) objection at trial was based on an issue not raised by the trial testimony, (2) Truesdale did not make an offer of proof at trial to discern whether Anna's testimony that day would raise the 404(b) issue, and (3) Truesdale failed to object when the objectionable content was later raised.

## Improper Vouching Testimony

[28] Truesdale next contends that the trial court erred in admitting testimony by a State's witness in violation of Indiana Evidence Rule 704(b), which provides:

> Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

Such testimony invades the province of the jury in determining the credibility of the witnesses and the weight of the evidence. *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012).

[29] Despite L.C. being an adult at the time of trial, the State called Whitney Mallow ("Mallow"), a trained child forensic interviewer, to testify regarding her February 2012 interview with L.C. (Tr. 318-19.) The State elicited the following testimony:

> Q: Did you – did [L.C.], during your interview with her, seem to be firmly based in reality?
>
> A: Yes.
>
> Q: Did you observe anything during your interview with her to indicate that she was not firmly based in reality?

(Tr. 321.) Truesdale then objected to the testimony based on Rule 704(b). The court overruled the objection, and Mallow responded "No." (Tr. 322.) The State then asked: "Did you observe any signs or any indications during your interview with [L.C.] that she was coached or influenced to provide her account of sexual abuse?" (Tr. 323.) Over Truesdale's objection that the State's question sought to bolster L.C.'s credibility, the trial court allowed Mallow's response: "No." (Tr. 323.) Finally, the State asked whether Mallow learned anything during the interviews "that was inconsistent with [L.C.'s] assertion of sexual abuse[.]" (Tr. 323.) Truesdale again objected, and Mallow responded: "Not to the best of my recollection." (Tr. 324.)

[30] In the past, Indiana permitted some form of vouching of child witness testimony in child molestation cases. *See Hoglund v. State*, 962 N.E.2d 1230, 1233-34 (Ind. 2012) (discussing *Lawrence v. State*, 464 N.E.2d 923 (Ind. 1984)),

*reh'g denied*.  The justification for vouching testimony in these cases was that a child's capacity to accurately describe sexual contact with an adult was automatically an issue, whether or not the opponent attempted to impeach the child on the basis of a lack of capacity.  *Lawrence*, 464 N.E.2d at 925.  Thus, *Lawrence* permitted some accrediting of the child witness's testimony, as long as the vouching witness's opinions did "not take the direct form of 'I believe the child's story', or 'In my opinion the child is telling the truth.'"  *Id.*

[31]     Following the adoption of the Indiana Rules of Evidence, however, the Court in *Hoglund* expressly overruled *Lawrence*, holding that certain expert testimony that was "an indirect but nonetheless functional equivalent of saying the child is 'telling the truth'" violated Rule 704(b).  *Hoglund*, 962 N.E.2d at 1236.  After *Hoglund*, subsequent decisions from this Court held that expert testimony about whether a child victim was coached violated Rule 704(b); however, this Court held that general testimony about the signs and indicators of coaching and the presence or absence of those signs in the child victim nevertheless preserved the ultimate credibility issue for the jury.  *See Kindred v. State*, 973 N.E.2d 1245, 1258 (Ind. Ct. App. 2012), *trans. denied*; *Archer v. State*, 996 N.E.2d 341, 349 (Ind. Ct. App. 2013), *trans. denied*; *Bean v. State*, 15 N.E.3d 12, 20 n.5 (Ind. Ct. App. 2014), *trans. denied*.[11]

---

[11] The State cited both *Archer* and *Bean* at trial.

[32] During the pendency of this appeal, however, our supreme court expressly overruled *Kindred* and *Archer*, holding that the "subtle distinction" between whether a child has or has not been coached and whether a child did or did not exhibit signs of coaching was "insufficient to guard against the dangers that such testimony will constitute impermissible vouching as we expressed in *Hoglund*." *Sampson v. State*, No. 87S01-1410-CR-684, slip. op. at 9 (Ind. July 30, 2015) (opinion certified Sept. 18, 2015). However, the court in *Sampson* also held that such testimony may be appropriate where the defendant has "opened the door." Slip op. at 9.[12]

[33] In their briefs, both parties discuss *Hoglund* and related cases, but we fail to see their relevance. L.C. was nineteen years old at the time she disclosed the abuse and twenty-two years old when she testified at trial. Thus, the underlying justification for the admissibility of vouching testimony in a child sexual abuse case (that is, the unique credibility issues raised by a child's capacity to testify about sexual contact with an adult) is not present here.

[34] Moreover, even if the exception applied, Mallow's testimony as to whether L.C. seemed "firmly based in reality" and exhibited signs of coaching runs afoul of our supreme court's decisions in *Hoglund* and *Sampson.* These cases

---

[12] Under the principle of opening the door, "where one party introduces evidence of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence otherwise would have been inadmissible." *Sampson*, slip op. at 9 n.4. Evidence relied upon to open the door must leave the trier of fact with a false or misleading impression of the facts related. *Beauchamp v. State*, 788 N.E.2d 881, 896 (Ind. Ct. App. 2003).

both hold that expert testimony that directly or indirectly comments on the truthfulness of a child witness in a child sexual abuse case is inadmissible under Rule 704(b). And although the State contends that Truesdale "opened the door" to credibility-bolstering testimony by asking L.C. about her "very bad emotional state" at the time she disclosed the abuse (Tr. 154), L.C.'s admission that she was depressed, anxious, and experiencing suicidal thoughts did not "open the door." By this line of questioning, Truesdale did not leave a false or misleading impression that L.C. was coached or delusional. *See Hamilton v. State*, No. 65A04-1412-CR-592, slip op. at 10 (Ind. Ct. App. Sept. 9, 2015) (defendant's act of "[m]erely asking the witnesses whether they had been told what to say is not equivalent to presenting evidence that they had been told what to say, or creating a false impression in the jury that they had been"), *petition for reh'g filed (opinion not yet certified)*. The trial court thus abused its discretion in admitting Mallow's indirect vouching testimony.

[35] Nevertheless, the State contends that any error in admitting Mallow's testimony was harmless in light of the "powerful" evidence of Truesdale's guilt. (Appellee's Br. 22.) Errors in the admission of evidence are generally disregarded as harmless error unless they affect the substantial rights of a party. *Hoglund*, 962 N.E.2d at 1238. In determining whether a defendant's substantial rights have been affected, we look to the evidence's probable impact on the fact finder. *Id.* The improper admission of evidence is harmless "if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing

court there is no substantial likelihood the challenged evidence contributed to the conviction." *Id.*

[36] Apart from Mallow's brief testimony, L.C. testified in detail and at length about the pattern of sexual abuse she suffered throughout her teenage years. Moreover, Anna substantially corroborated L.C.'s accounts of specific incidents of conduct, such as the frequent massages, the time Anna discovered Truesdale was behind locked doors with L.C., Truesdale's habit of walking into the bathroom while L.C. was bathing, and the incident during which Anna saw Truesdale inappropriately kissing L.C.'s stomach. Multiple family members, including Anna and Hefley, were concerned enough about Truesdale's behavior to ask L.C. whether he had an inappropriate relationship with her. There was substantial independent evidence of Truesdale's guilt.

[37] Furthermore, Truesdale cross-examined Mallow about her experience with forensic interviews of older children and adults, which allowed the jury to consider Mallow's testimony in light of her more limited experience with young adults. As a child forensic interviewer, Mallow's testimony about an adult's credibility thus likely had minimal impact on the jury. And because L.C. testified as an adult, the jury was able to assess her credibility as any other witness.

[38] Because there was substantial independent evidence of Truesdale's guilt and we are satisfied there was no substantial likelihood the testimony contributed to the

conviction, the trial court's admission of improper vouching testimony was harmless error.

# Conclusion

[39] The trial court properly excluded evidence that L.C. allegedly made a prior false accusation. The trial court did not abuse its discretion in admitting Truesdale's statement to his wife that he had sexual contact with the victim. And although the trial court abused its discretion in admitting improper vouching testimony of a forensic child interviewer, the error was harmless.

[40] Affirmed.

Baker, J., and Mathias, J., concur.